（34 South. 723.)

No. 14,183.

SUCCESSION OF MILLER v. MANHATTAN LIFE INS. CO. et al.*

(May 11, 1903.)

LIFE INSURANCE POLICY—ASSIGNMENT—VALIDITY—PROVISION FOR WIFE—CONSIDERATION—DATION EN PAIEMENT.

1. The validity of the assignment of a life insurance policy is to be determined by the law of the place where the assignment is made, and not by the law of the place where the policy was issued or the insurance is payable. The insurance contract and the assignment are two distinct, separate contracts.

2. The taking out of life insurance in favor of a third person may constitute a stipulation pour autrui, but the assignment of a policy already taken out is an ordinary contract between the assignor and the assignee.

3. A husband, who, in order to provide for his wife, transfers to her a policy which he had theretofore taken out on his own life, payable to his executors, administrators, or assigns, would not seem to be exercising a liberality, but to be discharging the obligation that rests upon every husband to make provision for his wife for the time after his death; but this obligation to make provision for the wife is not a legal or perfect obligation, and is not classible

*Rehearing denied June 29, 1903.

in any one of the four categories into which the Code has divided natural obligations. It is therefore a purely moral obligation, and, since the Code denies any legal operation to purely moral obligations, it cannot serve as a consideration for an onerous contract. A transfer of property (in this case a life insurance policy) by the husband to the wife in satisfaction of it is therefore not an onerous contract, but a donation, and, as such, subject to the rules of form prescribed for donations.

4. This obligation of the husband to make provision for the wife for the time after his death is, besides, subject to the uncertain condition of the predecease of the husband, and for this additional reason is not such a debt as may serve as a legitimate cause, within the meaning of article 2446, Rev. Civ. Code, for a dation en paiement by husband to wife.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by the succession of Henry Miller against the Manhattan Life Insurance Company and others. Judgment for defendants, and plaintiff appeals. Reversed.

Robert John Maloney, for appellant. Dinkelspiel & Hart, for appellee Insurance Co. Bernard Titche and Bernard McCloskey (Robert L. Tullis, of counsel), for appellee Annie S. Miller.

PROVOSTY, J. Henry Miller, the administrators of whose succession bring this suit, took out insurance to the amount of $5,000 on his own life in the defendant insurance company in favor of "his administrators, executors, and assigns," and, after he had paid 10 yearly premiums of $247, assigned the policy to his wife, without consideration, unless it was in satisfaction of the obligation that rests upon the husband to make provision for his wife for the time after his death. The administrators of his succession claim that this assignment was a donation to the wife, and was null, because not made in the form prescribed by law for donations inter vivos; and they ask that the defendant company account to them for the amount of the policy. The insurance company has paid the amount of the policy to Mrs. Miller, but on the condition that she will return the money in case the present suit is decided in favor of plaintiffs, and it has exacted a bond for the faithful performance of the agreement. Mrs. Miller and the insurance company are made defendants, and the insurance company has called in warranty the surety on the bond. The lower court rejected plaintiffs' demand, and they have appealed.

It is not denied that this policy was an incorporeal right; nor that the rule of our law is that the donation of an incorporeal right must, under pain of nullity, be made by authentic act. Civ. Code, art. 1536. And it is not claimed that the assignment was made by authentic act. But it is contended, as a first defense, that this assignment is not amenable to our laws, but is governed by the laws of the state of New York, and is valid according to the laws of that state.

The assignment was made long after the insurance contract. It was a contract between Miller and his wife, entered into at the place of their domicile, in Louisiana. The insurance contract between Miller and the insurance company and this assignment between Miller and his wife are not a single contract, but two distinct, separate contracts. Granting that the insurance contract itself is a New York contract, governed by the laws of the state of New York, as in fact it is, since the parties so agreed, the consequence does not follow that the assignment also is. The insurance contract was intended to govern the relations between the company and the holders of the policy, but not the relations between the assignor and assignee of the policy. It did not undertake to prescribe to whom Miller should make the assignment, nor by what form of contract he should make it—whether by sale or donation—nor to regulate his capacity and that of his assignee to enter into contractual relations with each other; and these are the very questions in controversy here. We think the contract between Miller and his wife must be held to be governed by the laws of Louisiana, the place of their domicile and of the contract. "The validity of the assignment" of a policy of life insurance "is to be determined by the law of the place where the assignment was made, and not by the law of the place where the policy was issued or the insurance payable." 19 Am. & Eng. Ency. (2d Ed.) p. 90. Incorporeal rights follow the person of the owner, and the validity and effect of their transfer is governed by the law of the place where the transfer takes place. 22 Am. & Eng. Ency. (2d Ed.) p. 1343. This rule is not challenged in the host of

cases cited by the learned counsel for Mrs. Miller. Those cases would be in point if the controversy here were between the company and the claimants of the policy, but the company in this case is nothing more than a stakeholder. Pritchard v. Norton, 106 U. S. 124, 27 L. Ed. 104, for instance, was a suit between the obligor and obligee on a bond. One of these cases, however—that of Hallgarten v. Oldham, 135 Mass. 1, 46 Am. Rep. 433—calls for special notice. As quoted by counsel, it appears to be directly in point. Analysis, however, shows it not to be so. It was a case involving the question of the sufficiency of delivery as against creditors resident at the situs of the property in controversy. The property had been sold, but had not been delivered, otherwise than by the transfer of the receipt of the warehouse in which it was stored. At the place of the transfer of the receipt this was sufficient delivery, as against the creditors of the vendor; at the place of the situs of the property, it was not; and the question was as to which law should govern. As a matter of protection to local creditors, and on the principle that the right resides in every sovereignty to regulate property found within its jurisdiction, the court held that the law of the situs of the property governed. Evidently the case bears no analogy to the present case.

Our conclusion is that the assignment of the policy was a Louisiana contract, to be governed by the law of Louisiana.

What would have been the situation if the insurance company had paid the money unconditionally to Mrs. Miller before notification of the infirmity of her title is a question that need not be considered, since it would be merely a moot question in the case.

Anticipating that this first defense might not hold, the learned counsel of Mrs. Miller makes the further contention that donations made by means of a stipulation pour autrui are not subject to the rules of form prescribed by the Code for ordinary donations, and that the assignment of this policy, taken in connection with the original contract, was such a stipulation pour autrui. Miller, it is said, took out this policy on the eve of his marriage, intending it for the benefit of his future wife, and did not then make it payable to her only because she at that time did not yet have an insurable interest in his life, and possibly, also, from a feeling of delicacy, the lady not being yet his wife; that afterwards he neglected the matter until the seeds of disease growing within him admonished him of the necessity of putting into execution his antenuptial design. Granting that such was the intention, the case is not one where the will can be taken for the deed. The fact remains that Miller took out the policy in his own name, and kept it under his exclusive control, as part of his estate, for the space of 10 years, during which time he had the legal, if not even the moral, right to dispose of it as he saw fit. The transfer, in connection with the point here under discussion, must be dealt with as if such intention had not existed. As hereinabove attempted to be shown, it was a separate and independent contract from the insurance contract. The latter was a stipulation pour autrui, but the assignment was simply the transfer of an incorporeal right.

Another defense is that the assignment was not a donation, but an onerous contract, and therefore that it was not subject to the rules of form prescribed for donations. The husband made it, it is said, in satisfaction and discharge of his obligation to make provision for his wife against the time when he should no longer be there to support her; that is, after his death.

This defense would seem to be borne out by the facts. Miller would seem to have been impelled to make the assignment not so much by a spirit of liberality as by a sense of his duty towards his wife. At the time of making it he told the notary that he had already provided for his daughter, and that he thought it was right he should provide for his wife, and that he wanted to make the assignment for that purpose. There would seem, also, to be a great deal of good sense in the contention that a husband who insures his life in favor of his wife, or who, happening to have already insured his life, transfers the policy to his wife, for the purpose of providing for her for the time after his death, does not exercise a liberality, but simply discharges an obligation. With the advent of life insurance, the making of such provision lies within the reach of every husband and father; and the court may take judicial cognizance of the fact that the making of such provi-

sion has already become, or is at all events fast becoming, part of the morals and customs of our people—so much so that the husband and father of to-day would consider himself recreant to his duty, if, not having otherwise already provided for his wife and children, he did not seek to make provision for them by insurance in one or other of its very numerous forms. To say that a husband or father who does this exercises a mere liberality, appears to us to put an entirely wrong construction upon the situation. He may be acting at great personal sacrifice, and under the compulsion of a stern sense of duty, and to say to him that he is doing it merely because he wants to be liberal sounds almost like mockery. In France it is the unanimous sentiment, with the one dissent of Laurent, that what is done or given in satisfaction of a moral obligation·is not a donation. 2 Troplong, Don. Entre Vifs, §§ 1070, 1073, 1075; 3 Demolombe, Don. Entre Vifs et Test. §§ 36, 38, 39, 42; Fuzier-Hermann, art. 931, notes 35, 37, 38, 40. Contra, Laurent, T. 12, No. 355.

But our Code, art. 1757, draws sharply the line between mere moral obligations and such as it calls "natural obligations," and denies to the former not only a right of action, but also "any legal operation"; and it proceeds to classify natural obligations into four distinct categories, in none of which could we place this moral obligation of the husband. Therefore, if we were to let this moral obligation of the husband serve as the consideration of an onerous contract, we should be going counter to the plain provision of the Code, since we should be giving to this obligation a legal operation, when the Code expressly says it can have none.

But granting, argumenti gratia, that under our Code a moral obligation, as contradistinguished from a natural obligation, may be allowed legal operation to the extent of serving as a consideration for the transfer of property, and granting that Miller made this transfer in satisfaction of the moral obligation that rested on him to provide for his wife, there is another obstacle in the path of the learned counsel for Mrs. Miller; and that is the prohibition against husband and wife entering into onerous contracts with each other.

But, says the learned counsel, there are exceptions to this prohibition; article 2446 mentions several, and these are not the only ones, but are given merely by way of illustration, and a transfer is permitted whenever there exists a legitimate cause. And so it is, but is this moral obligation a legitimate cause, within the meaning of article 2446, even conceding that under our Code a moral obligation can be the consideration of an onerous contract? A moment's reflection will show, we think, that it is not. The Code prohibits onerous contracts, but permits dations en paiement where there exists a legitimate cause. Evidently what is meant here by a "legitimate cause" is a debt. As to this, says Marcadé, all the authors are agreed. Comm. art. 1595, C. N.: "The circumstances under which transfers of property are permitted between the spouses are those where the contract has less the character of a sale properly so called than of a forced payment." ·The question is, therefore, whether this obligation·was at the time of the transfer a debt by Miller to his wife. Evidently it was not. Granting all that can possibly be claimed for it, Miller was not under any obligation to pay or give, then and there, or at any time during his life, to his wife, anything in discharge of this obligation; and she, on her part, had no right to claim or ask that anything be paid or given to her during the life of her husband. The obligation was to provide support for after death, and not to pay or give anything to the wife during life. There was no obligation to enrich her during his life. There was no obligation to take out of his own estate and put into hers any of his property. Besides, the obligation, such as it was, was subject to the condition of the predecease of the husband—an uncertain event—and until the happening of that condition there was nothing due as a debt susceptible of valid payment. Until then the obligation was, for all purposes of payment to the wife, suspended; and the Code is express that what is due under a suspensive condition, dependent upon·an uncertain event, is not due, and cannot form the consideration of a payment. "It is considered that a thing has been paid, when not due, if the payment was made by virtue of an agreement, the effect of which is suspended by a .condition, the event of which is uncertain." Article 2308.

Our conclusion is that the transfer was not an onerous contract, and that, such being the case, it was subject to the forms prescribed by law for donations, and was null for nonobservance of these forms.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that Mrs. Harriett Miller Maloney and Henry H. Maloney, joint administrators of the succession of Henry Miller, deceased, have judgment against the Manhattan Life Insurance Company of New York in the sum of $4,770, with 5 per cent. per annum interest thereon from the 12th day of February, 1900, and the costs of this suit, with the right reserved to claim of the said company the further sum of $230, amount held back on account of discrepancy in the age of Henry Miller, deceased. And it is further ordered, adjudged, and decreed that the said company have judgment against Mrs. Annie S. Miller and Charles C. Hartwell, in solido, in the like sum of $4,770, and like interest and costs.