FOURNET, Justice.
 

 This case is before us on an appeal from a judgment dismissing the oppositions filed by the widow of the late A. Sidney Burns and certain ordinary creditors of his estate to the first and final account of the testamentary executor of the succession.
 

 A. Sidney Burns died in Lake Charles, Louisiana, on March 16, 1938, leaving an olographic will dated June 28, 1937, in which he bequeathed to his son, A. Sidney Burns, Jr., issue of his first marriage, to Linnie Mai Locke (hereinafter referred to as the claimant), the disposable portion of his estate, and named S. M. DeBakey as his testamentary executor. DeBakey qualified as the executor and sold all of the property Burns died possessed of. On December 5, 1938, he filed his first and final account and plan of distribution, from which it appears that the succession was insolvent. On December 13, following, Mrs. Lois Fussel Burns (hereinafter referred to as the opponent), widow of Burns by his third marriage, as the natural tutrix of her minor child, issue of that marriage, filed an opposition to the account, attacking principally the validity of three mortgage notes listed therein as being due the first wife, aggregating the principal sum of $7,050, plus interest and attorney fees. These mortgage notes are claimed to have been given as collateral security for an alleged balance of $8,000 due by the deceased to his first wife as the result of the settlement of the community formerly existing between them.
 

 In the opposition it is alleged that prior to her marriage to decedent, opponent, having learned that the community formerly existing between the decedent and the claimant had not been settled and there remained a balance of $15,000 due the claimant by the decedent, refused to accept decedent’s proposal of marriage until he settled this claim with his former wife; that such a settlement was made in writing on November 22, 1933, the deceased turning-over to the claimant practically all of the property he then possessed, both real and personal, including a furnished home occupied by the claimant. in Ponchatoula,, Louisiana, certain vacant property, building and loan stock, an automobile, etc., the claimant accepting the property in full satisfaction of her claim and completely absolving the decedent from any further liability with respect to her claim to the community formerly existing between, the opponent, as a result thereof, marrying the deceased on the 29th of the same month; and that subsequently, during a temporary separation from the opponent, the decedent, together with the claimant, in furtherance of a scheme to defraud opponent and the issue of her marriage to the deceased, executed an instrument on June 18, 1934, setting aside their agreement of November 22, 1933, appraising the property previously transferred to the claimant in accordance with the agreement of November 22, 1933, at $6,000, transferring an undivided 6/10ths interest in the.Tangipahoa Abstract Company to the claimant for a recited consideration of $1,000, and declaring that there remained due the claimant by the decedent from the community formerly
 
 *544
 
 existing between them the sum of $8,000. The opponent further alleged that the notes held by the claimant were not only issued without consideration, but in fraud of her rights and those of her minor child, and, further, that the claimant, by her execution of the instrument of November 22, 1933, is estopped from asserting any interest in this succession resulting from any claim which she may have as to the former community existing between her. and the decedent. She further opposed the account in the following respects: The inclusion of an item of $60, which she claims is not due the West Publishing Company by the succession; (2) the failure of the executor to include in the inventory a diamond ring, four loving cups, certain royalty rights owned by the deceased affecting property located in the parishes of Terrebonne and Calcasieu, and the interest in the Tangipahoa Abstract Company transferred without consideration to the claimant, all of which the opponent seeks to have the executor account for.
 

 • By a supplemental petition filed on March 18, 1939, the opponent (Mrs. Lois F. Burns) made herself a party to the original opposition in her individual capacity, accepting the community that formerly existed between herself and the decedent with the benefit of inventory.
 

 A second supplemental and amended opposition was filed by the opponent in her individual capacity and as the tutrix of her minor child on April 1, 1939, in which she opposed the funeral charge of $721 as a privileged claim against the estate in so far as it exceeds the sum of $200 allowed by law; opposed items amounting to $192.-60, which cover expenses in connection with litigation between the opponent and the testamentary executor; and amplified certain allegations in the original and first supplemental petitions of opposition, alleging that the execution of the mortgage notes and the transfer of the interest- in the Tangipahoa Abstract Company were in the nature of “gratuitous alienations” of the movables and immovables of the community, constituting dispositions of the common property in contravention of the prohibitory provisions of Article 2404 of the Revised Civil Code; that she believed A. Sidney Burns, Jr., son of the decedent by his first marriage, took possession of the diamond ring of the decedent after his father’s death and lost it, for the value of which the complainant, as the natural tutrix of A. Sidney Burns, Jr., is 'liable; and that in the event the executor fails or refuses to take the necessary steps to recover the diamond ring and xthe interest in the Tangipahoa Abstract Company, that he be held liable for the value thereof.
 

 The claimant made herself a party to these proceedings, filing, on December 13, 1939, an answer in the nature of a general denial to the original, first, and second oppositions. A similar answer was filed by the testamentary executor.
 

 Opponent further supplemented her opposition by filing a third petition on October 7, 1940, claiming the homestead exemption of $2,000 allowed by law in favor of the surviving widow and the minor child out of the proceeds of the property occupied by the' decedent at the time of his death and
 
 *545
 
 attacking the validity of the alleged sale of this property to James J. Thompson by the decedent and the note given the decedent by Thompson in the sum of $1,550 as part payment therefor, secured by vendor’s lien on the property, alleging that “the entire proceeding was merely an attempt on the part of said decedent to place the title to said property therein described in the name of opponent, his wife, by and through the use of the said James J. Thompson as an ‘interposed party,’ in order to circumvent the prohibitions of the law, prohibiting the sale between husband and wife; and to attempt to create á fictitious debt, secured by vendor’s lien and mortgage upon said property for the avowed purpose on the part of said decedent to ‘hold something against said property in case she should ever leave him;’ all contrary to -the laws of the State of Louisiana, and especially Article 2446 of the Revised Civil Code,” alleging further that she is entitled to be paid the $2,000 homestead claimed by her out of the proceeds of the sale of this property at the succession proceedings conducted by the testamentary executor, free of the said $1,550 note, now held by the claimant, which was transferred by the decedent to his first wife for the purported purpose of further securing his obligation to her in the amount of $8,000.
 

 On October 10, 1940, the day before the trial of these oppositions, three creditors of the deceased, Rosman Adjustment Company, Louis R. Kastner, and Disney, Inc., who were all carried as ordinary creditors in the executor’s account, filed their opposition to each and every item of debt claimed to be due by the said succession and required the strict proof of them, adopting as their grounds of oppositions all of those urged by Mrs. Lois F. Burns, with the exception of those peculiar to her.
 

 The following day, the claimant and the testamentary executor, alleging that the third supplemental opposition came too late and that by it the opponent sought to change her demand by setting up new grounds of attack after issue was joined in the filing of answers, and within three days of the trial thereof, in contravention of Article 419 of the Code of Practice and the jurisprudence thereunder, each filed a motion to “strike” and dismiss the same. The executor also filed exceptions of no cause and no right of action to the oppositions of the opponent and the creditors to the payment of the full amount of the funeral expenses as a privileged claim against the estate.
 

 On July 21, 1941, the trial judge rendered judgment overruling the exceptions of no cause and no right of action filed by the testamentary executor as to the three creditors, under the provisions of Article 3193 and 3194 of the Revised Civil Code, but maintaining them as to the opponent, for the reasons that these articles, while giving to creditors of an insolvent succession the right to oppose excessive funeral expenses, does not give such a right to a wife who is claiming a homestead exemption of $2,000; overruling the motions to “strike” and dismiss the third opposition of the opponent filed by the claimant and the testamentary executor
 
 *546
 
 on the ground that “any oppositions” may be filed to an account of an administrator at any time prior to the homologation of the account; and, on the merits, except as to the reduction of the funeral charges in favor of the creditors, denied in toto all of the relief sought by the opponent and the creditors.
 

 The opponent has appealed from the judgment of the lower court both individually and as the natural tutrix of her minor child; the creditors, joining together, have also appealed.
 

 The first question for our determination is whether or not Mrs. Linnie L. Burns, the claimant, did in fact execute an instrument on November 22, 1933, whereby she agreed to and did accept certain property from the decedent in full settlement and satisfaction of her claim against him,, absolving him from any further liability thereon; and, second, if so, the effect of such a release.
 

 The record unmistakably shows that such an agreement was executed, even though the claimant denied having executed the same in her answer to the oppositions and testified accordingly under oath on the witness stand, for, in addition to the testimony of the opponent, who was acquainted with the claimant’s signature, to that effect, we have the corroboration of her testimony in the ¡persons of her mother, her brother, and her sister-in-law — in all respects other than the recognition of claimant’s signature, with which they were unfamiliar— as well as the unimpeachable evidence re- ' fleeted by the instrument • dated June 18, 1934, signed by the claimant and the decedent, and upon which her (claimant’s) entire claim in this succession is based, that such an instrument did exist. In the document dated June 18, 1934, it is stipulated that
 
 "The parties hereto do hereby mutually agree and declare that a certain agreement, termed a compromise and release, made and entered into between them, dated November 22, 1933,. is grossly unfair and unequitable, and the same is hereby set aside, annulled and
 
 rescinded.” (Italics ours.) The parties then proceed to appraise the real estate transferred to the claimant in pursuance to the said agreement of November 22, 1933, at $4,000, to value the 20 shares of capital stock in the Ponchatoula Homestead Ass’n. at $2,000, to-transfer to claimant decedent’s undivided 6/10ths interest in the Tangipahoa Abstract Company for the recited consideration of $1,000, and to declare that of the original 'claim of $15,000 which claimant had against decedent as the result of the dissolution of the community by divorce in 1931, there remained due her the sum of $8,000.
 

 The decedent, having given practically all of his personal and real property to his first wife, who was willing to receive it in full payment and satisfaction of the amount due her as the result of the dissolution of their community, obtained thereby a valid release and the debt became extinguished. Articles 2655 and 2656 of the Revised Civil Code. See, also, Webster v. Hartman, 148 La. 1080, at page 1093, 88 So. 462.
 

 
 *547
 
 But counsel for claimant and the testamentary executor argued in brief that inasmuch as the claimant had accepted from the decedent property of the approximate value of $6,000 or $7,000 in satisfaction of an indebtedness to her of $15,000, there remained a
 
 natural obligation
 
 on the part of the deceased to right the wrong and that this was sufficient and valid consideration for the execution of the document of June 18, 1934, and his discharge of the same. In support thereof they rely mainly upon the case of Jamison v. Ludlow, 3 La.Ann. 492, in addition to those cases in our jurisprudence holding that a
 
 natural obligation
 
 is a sufficient consideration to support a ■contract.
 

 None of these cases are analogous to the case under consideration here, and, in our opinion, are inapposite. The Jami-son case, in which language was used which appears to support the contention of the claimant, is only authority for the proposition that “The rule which forbids oral, evidence to contradict or vary the terms of a written contract, is not infringed by the admission of oral evidence to prove a new and distinct agreement,” or to prove that a written contract was fraudulently procured. In that case the plaintiff appealed from a judgment dismissing his suit, on the trial of which he was not permitted to prove by parol evidence that a written compromise agreement—releasing upon the payment of half of the debt in installments the obligation due plaintiff by the defendants—had been procured by fraud, and also refusing to permit him to prove, by oral evidence, a subsequent and new agreement to pay the balance of the old debt.
 

 In Succession of Miller v. Manhattan Life Insurance Co., 110 La. 652, 34 So. 723, 725, it was pointed out that “our Code, art. 1757, draws sharply the line between mere
 
 moral obligations
 
 and such as it calls
 
 ‘natural obligations,’
 
 and denies to the former not only a right of action, but also ‘any legal operation’ ”; the court holding that the four categories of natural obligations enumerated in Article 1758 of the Revised Civil Code are exclusive in their scope. (The italics are ours.) Into none of these categories can the obligation in the instant case be fitted.
 

 The giving of a
 
 thing
 
 in payment of an obligation under the provisions of Article 2655 of the Revised Civil Code, extinguishes, in our opinion, the obligation in toto, the same as if the full amount had been paid with cash. Consequently, any obligation that could arise as the result of the fact that the property transferred is of less value than the amount of the claim, in discharge of which it was accepted, is a moral one, which, under the express provisions of the Revised Civil Code, will not support a contract. Article 1757, and the Succession of Miller, supra.
 

 The contract for the giving of a thing in payment of an obligation provided for in our Civil Code resembles very closely what is known in the common law as an “accord and satisfaction,” defined in Corpus Juris Secundum as follows:
 

 
 *548
 

 “An 'accord’ is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute,
 
 * * *
 
 something other than or different from what he is, or considers himself, entitled to;
 
 and a ‘satisfaction’ is the execution, or performance, of such an agreement.” 1 C.J.S., Accord and Satisfaction, p. 462, § 1. To the same effect is 1 Cyc. 307 and 1 C.J. 523, Section 1.
 

 “When an accord is performed or executed, there is an accord and satisfaction and, from the standpoint of consideration, the transaction is
 
 fait accompli. An accord and satisfaction
 
 * * *
 
 extinguishes, discharges, arvd supersedes the original demand
 
 and bars or prevents any action or proceeding thereon * * 1 C.J.S., Accord and Satisfaction, p. 548, § 4'5.
 

 “It was apparently first laid down by a case in the time of Coke (Pinnel’s Case, 5 Coke 117a) and has subsequently been treated by most authorities as settled law, that
 
 an accord and satisfaction of a claim or demand,
 
 * * *
 
 where the parties so intend or agree, is effected by the transfer and acceptance of property
 
 * * *
 
 regardless of the actual or intrinsic worth of the property so transferred or conveyed
 
 * * *
 
 provided it is of some value.
 
 So the fact that the property transferred is apparently of less value than the demand, or that it is of small value as compared with the amount of the claim in discharge of which it is accepted, is immaterial * *
 
 The reason for this rule is that “*
 
 * *
 
 a debtor is under no obligation to deliver, or a creditor to accept, anything other than •money, in dicharge of a debt or demand,
 
 and when they do so, there is such a giving and acceptance of something other or different from that which is claimed or owed as to bring the transaction within the definition of accord and satisfaction * * 1 C.J.S., Accord and Satisfaction, pp. 487, 488, § 20. To the same effect is 1 Cyc. 335. (All of the italics in these excerpts are ours.)
 

 We are therefore of the. opinion that the document dated June 18, 1934, declaring that a balance of $8,000 is due claimant, is without legal effect and unenforceable and that the three mortgage notes given claimant as collateral thereto fall with it. Articles 1771, 3133, 3136, 3138, of the Revised Civil Code. Consequently, they must be disallowed on the tableau and plan of distribution of . the testamentary executor. ‘The undivided 6/10ths interest in the Tangipahoa Abstract Company, transferred to the claimant by the same instrument, was without consideration. It, therefore, belongs to the succession, and must be accounted for.
 

 We now pass to the claim of the opponent, Mrs. Lois F. Burns, for a homestead exemption from the proceeds of the sale of the home occupied by her deceased husband to the extent of $2,000, under the provisions of Section 1 of Article XI of the Constitution of 1921, the pertinent part of which reads as- follows:
 

 “There shall be exempt from seizure and sale by any process whatever except as
 
 *549
 
 herein provided, * * * the homestead, bona fide, owned by the debtor and occupied by him * * * of every head of a family * * *.
 

 “Provided, that in case the homestead exceeds two thousand dollars in value, the beneficiary shall be entitled to that amount in case a sale of the homestead under legal process realizes more than that sum. * * *
 

 “The benefit of this exemption may be claimed by the surviving spouse, or minor child or children, of a deceased beneficiary.”
 

 The opponent is not only the surviving spouse of the decedent, but is also head of a family composed of the minor child of the decedent, entirely dependent upon her for support, and, in our opinion, is entitled to the homestead exemption provided for in this constitutional article. Tinney v. Vittur, 134 La. 549, 64 So. 407; Milliken & Farwell v. Roger, 138 La. 823, 70 So. 848; and Adams v. McCoy, 140 La. 26, 72 So. 797.
 

 The only items remaining in contest, the others having been abandoned, are (1) the value of a diamond ring which opponents contend is due the estate by the claimant, Mrs. Linnie L. Burns, under the provisions of Article 2318 of the Revised Civil Code, because the same was lost by her unemancipated minor son, A. Sidney Burns, Jr., subsequent to his father’s death, and (2) the amount of the funeral expenses in excess of $200, in so far as the lower court held it was not applicable to the surviving widow and minor child.
 

 The responsibility placed on the parent under Article 2318 of the Revised Civil Code is based on the ground that the person having control of the minor could have prevented the tortious act and did not. Cleaveland v. Mayo, 19 La. 414. It appearing, from the undisputed testimony in the record, that the son, A. Sidney Burns, Jr., had been living with his father while attending high school in Lake Charles for a period of approximately a year prior to his father’s death and that he lost the ring after it had been given him by the nurse who attended his father in his last illness, we cannot see how the mother, Mrs. Linnie L. Burns, could have prevented the minor’s act. We therefore conclude that the trial judge properly dismissed the claim as to this item.
 

 One of the debts paid in preference over those of other creditors is that incurred in the interment of the deceased. Articles 3191 and 3192 of the Revised Civil Code. In Article 3193 it is declared that “If the property of the deceased is so encumbered as not to suffice for the payment of his creditors, the funeral charges may, upon the request of any of them, be reduced by the judge to a reasonable rate, regard being had to the station in life which the deceased held and which his family holds,” but the trial judge, having reduced the amount claimed as a privilege on this item to the extent of $200, at the request of some of the creditors, was without right to allow “on any account whatever, more than two hundred dollars for all the expenses occasioned by the interment of the deceased.” Article 3194.
 

 
 *550
 
 For the reasons assigned, the judgment of the lower court reducing the amount of the funeral charges as a privileged claim against the estate of the deceased to $200, in so far as it affects the creditors, and rejecting opponent’s claim against the testamentary executor and Mrs. Linnie Mai Locke Burns for the value of the diamond ring is affirmed; in all other respects the judgment is annulled and set aside, and it is now ordered, adjudged, and decreed that Mrs. Lois F. Burns be, and she is hereby allowed, out of the proceeds of the sale of the property located at 928 Sixth Street in Lake Charles, Louisiana, a homestead exemption of $2,000; it is further ordered, adjudged, and decreed that the claim of Mrs. Linnie Mai Locke Burns on the three mortgage notes held by her, viz: (a) one dated November 18, 1935, in the amount of $4,000, secured by a mortgage, on certain chattels, recorded in Book 32 of Chattel Mortgages, at page No. 480, (b) another dated June 19, 1936, in the amount of $1,* 550, secured by vendor’s lien and privilege ranking second to a first H. O. L. C. mortgage, on property located at 928 Sixth Street, Lake Charles, Louisiana, recorded in Book 116 of Mortgages, at page 457, and (c) the third dated August 27, 1937, in the amount of $1,500, secured by mortgage on certain chattels, recorded in Book 38 of Chattel Mortgages, at page 542, all in the Parish of Calcasieu, which were given to her in plédge to secure an alleged indebtedness of $8,000, are disallowed, and the same are hereby ordered cancelled from the public records of Calcasieu Parish; that the undivided 6/10ths interest in the Tangipahoa Abstract Company, which decedent purportedly transferred to Mrs. Linnie Mai Locke Burns by the instrument executed by them on June 18, 1934, belongs to the succession; and that the funeral charges, in so far as they are carried as a privileged claim against the estate, are reduced to the sum of $200. All of the costs incurred in the trial of the oppositions are to be borne by the appellees.
 

 O’NIELL, C. J., and ROGERS, J., concur in the result.