FOURNET, Justice.
 

 This case is before us on an appeal taken by Arlie G. Aymond, the administrator of the succession of his father, the late Newton G. Aymond, from a judgment maintaining the opposition filed by Mrs. Margaret Owen Aymond, the surviving widow of the decedent, to the final a.ccount of the administrator and awarding her $1,000 under the provisions of Article 3252 of the Revised Civil Code, less a credit of $300.
 

 Newton G. Aymond died intestate at his residence in Rapides Parish on October 5, 1940, leaving an estate consisting of certain personal properties belonging to him separately, including furnishings and other household goods in the house occupied by him and the opponent at the time of his death. On November 27 following, under a written agreement entered into between the opponent and the heirs of her husband, his children by a previous marriage, these furnishings and household goods were deeded to and accepted by her in full settlement of her claim against the estate for $1,000 as the surviving widow in necessitous circumstances. On January 24, 1941, the succession of the deceased was opened and one of his sons, Arlie G. Aymond, was appointed the administrator. According to the inventory filed, Aymond’s estate consisted of a postal savings certificate in the amount of $1,650; an old automobile, valued at $100; a Smith & Wesson pistol, valued at $18; an open-faced gold Waltham watch, valued at $25; and the $100 in cash found on his person at the time of his death, totaling $1,893, but neither the household furniture nor the disposition thereof was mentioned in the inventory. In March following, the administrator filed his final account, listing certain privileged and ordinary debts amounting to $552.80. The opponent, not having been listed as a creditor in this account, filed an opposition thereto, alleging, in addition to the fact that she was in necessitous circumstances and entitled to $1,000 under the provisions of Article 3252 of the Revised Civil Code, that she had been induced1 to sign the contract of November 27, 1940, wherein she acquired the household effects of her late husband, through error, that is, that she accepted this furniture and household goods in full settlement of her claim only after the heirs had fraudulently represented to her that the deceased had left no other money than the $100 found on his person at the time of his death, the fact that he had left $1,650 in postal savings being concealed from her. She prayed that she be awarded this $1,000 less a credit of $300, the alleged value of the furniture and household goods trans
 
 *474
 
 ferred to her. The trial judge rendered judgment accordingly and the administrator has appealed.
 

 Counsel for the administrator contends that the opponent, by entering into the agreement accepting the furniture left by the decedent, compromised and settled her claim against the estate, and that since she is bound thereby she cannot introduce any evidence to minimize the value of $1,000 placed on the furniture (by the parties to the agreement, for no fraud was proved.
 

 We do not think this agreement entered into by the opponent and the heirs of the deceased is a compromise settlement within the meaning and contemplation of the provisions found in Title XVII of Book III of the Revised Civil Code dealing with the method of acquiring things through transaction or compromise, but, rather, that it is a contract evidencing the giving of a thing or property in payment of a sum which is due, as dealt with in Chapter 13 of Title VII of this same book under the heading “Of The Giving In Payment.” See, Succession of Burns, 199 La. 1081, 7 So.2d 359. As such, the agreement is subject to all of the rules governing the ordinary contract of sale (Article 2659) and, consequently, “voidable by the parties, who have contracted under the influence of * * * error, fraud, violence or menace * * Article 1881. See, also Article 1819, et cetera.
 

 There is no question hut that the opponent is a surviving widow in necessitous circumstances. The only property of which she is possessed is that transferred to her under the agreement of November 27, 1940, and, according to the testimony of a furniture dealer, it is not worth even the $300 value placed thereon by her and by the trial judge. We are of the opinion that she signed the agreement of November 27, 1940, in the erroneous belief that, despite an alleged diligent search by some of the heirs, the only money that had been left by her husband was the $100 found on his person at the time of his death. The fact that the furniture is valued in the agreement at $1,000 is immaterial since that was not the “reality of the cause” or “the motive” for making the contract'. Article 1824 of the Revised Civil Code.
 

 Testifying in support of her claim, the opponent stated on the witness stand that she signed the agreement of November 27, 1940, in the presence of her attorney, the attorney for the heirs and Arlie G. Aymond, later appointed the administrator of the succession, only after she had been assured the heirs had made every possible effort to locate certain moneys they believed their father left, but to no avail, and that had she known of the existence of the postal savings certificate, she would neither have consented to the agreement nor signed the deed. She further testified she was under the impression that if the money was subsequently found, she would receive her just proportion thereof. When questioned directly by counsel for the administrator as to whether or not she had been advised at the time she signed the agreement that she was taking the furniture in full settlement of the claim she had against the succession “regardless whether the succes
 
 *476
 
 sion is $1 or $10,000,” she emphatically denied such advice had been given her. She further stated she did not accept the furniture because of the fictitious value placed thereon .in the contract, but because she thought that was all she could get from her husband’s estate. In this she is corroborated by Arlie G. Aymond, and although he contradicted her testimony as to the value placed by her on the furniture, he testified that the opponent, when she accepted the furniture, said that since “she couldn’t get nothing else, she would take the furniture.”
 

 The record shows that the opponent had not only been assured by her stepson Arlie that he made every possible effort to find the money of the deceased, to no avail, but also that she had herself, in an effort to ascertain the extent of her husband’s estate and before signing the agreement of November 27, 1940, gone to see another stepson, .Lora, when she was informed by Arlie’s wife that Lora had his father’s papers, including a will, but Lora denied having any knowledge of the effects of his father’s estate. However, at about the same time that opponent discovered her husband’s money had been put into postal savings, Lora Aymond voluntarily went to see her and told her that while searching for automobile papers of his own he had found among his father’s papers, which he then acknowledged his father had left with him for safekeeping, a • certificate showing the deposits made with the postal savings department by his father and he apologized for the information given her previously. When questioned on this phase of the case, Lora, answering the question “Well, Lora, * * * I judge from her (opponent’s) statement on the stand that she went to see you about this matter and that you told her that there wasn’t any money and later on you apologized to her for concealing that fact from her; what about that?” said: “Well, that calls for a little explanation too,” and when urged to make this explanation, he answered: “Well, I didn’t apologize for concealing anything because I hadn’t; I went to her after we found that Papa had money, I went to her with the one understanding, the apologetic angle of it was because I felt she should get a portion of the money, she hadn’t gotten it and then finding out I thought perhaps we could settle, get around the court and all that, so I went to her and asked her what she would like to have me do, my brothers and sisters knew nothing of it, and she told me, that was the angle, she told me that she wanted seven hundred dollars.” When pressed further with the question “You felt that she was entitled to some of this money and that is the reason you discussed the matter with her?” he said: “Yes, sir.” (Brackets ours.)
 

 When Arlie G. Aymond was on the stand, he admitted' his search for the money left by his father had been rather superficial, his inquiries being limited to the two banks in Alexandria, Louisiana, and none being made at the banks in Pineville, the savings and loan companies, the building and 'loan associations, homesteads, or the post office.
 

 Under these circumstances we cannot say that the trial judge erred in his ruling,
 
 *478
 
 or that we would be justified in disturbing the same.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 ODOM, J., absent.