214 So.2d 138 (1968)
252 La. 770
James B. WILLIAMS, Sr., et al.
v.
CITY OF BATON ROUGE et al.
Nos. 48832, 48846.
Supreme Court of Louisiana.
June 28, 1968.
Rehearings Denied October 9, 1968.
*140 Jack P. F. Gremillion, Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for applicant (48,832).
Jimmie R. Major, Ralph Brewer, Baton Rouge, for respondents (48,832).
Ralph Brewer, Baton Rouge, for applicant (48,846).
Jack P. F. Gremillion, Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., Jimmie R. Major, Baton Rouge, for respondents (48,846).
SUMMERS, Justice.
This is an action in tort for the wrongful death of Charles Edward Williams, a fifteen-year-old boy who drowned while swimming in a public pool. The action is brought by James B. Williams and Olevia Williams, the surviving father and mother, against East Baton Rouge Parish Recreation and Park Commission, owners and operators of the pool, and against Charles A. Green, father of the minor Jaural Leopold Green, one of the lifeguards on duty at the time of the drowning. The action has been dismissed against the City of Baton Rouge and other parties who were initially made defendants.
In the trial court there was judgment in solido against Charles A. Green and East Baton Rouge Parish Recreation and Park Commission, condemning them to pay $2,500 as damage to each plaintiff. On appeal to the First Circuit, the award to each plaintiff was increased to $10,000. We granted certiorari upon applications filed by defendants.
At approximately 1 p. m. on June 13, 1963 the deceased Charles Edward Williams, age 15, and a friend Michael Yates, age 14, arrived at the Brooks Park Swimming Pool, operated by the East Baton Rouge Parish Recreation and Park Commission. Charles could not swim and Michael was a poor swimmer at best.
They paid the admission charge of 25 cents, dressed in swim suits and entered the shallow end of the pool. After playing there for a few minutes they went to the deep end of the pool where another boy tried to teach Charles how to float. Five or ten minutes later they returned to the shallow water and resumed play there, having water fights and "horsing around".
Charles and Michael then returned to the other end of the pool which was nine feet deep. Their activity there consisted of jumping in, going down and touching the bottom with their feet and kicking up, at the same time holding onto a nearby ladder for safety and to help them reach the surface. Each of them did this five or six times. According to Michael, Charles apparently "kept coming up all right, but the seventh time he didn't." As Michael surfaced, he saw Charles standing on the bottom of the pool trying to walk toward the shallow end. Alarmed at this sight, Michael told several people sitting nearby "there was a boy drowning at the bottom of the pool." Apparently these people thought Michael was joking and they did nothing, whereupon he ran around the edge of the pool to summon the lifeguard, Jaural Green, who was sitting on a raised observation platform on the opposite side. Michael told Green there was a boy drowning at the bottom of the pool. According to Michael's testimony, Green "just looked down at me as if I was crazy, he didn't seem to believe me; he thought I was pulling a prank."
Realizing Green would not respond to his plea for help, Michael ran to the dressing rooms and told the "ticket woman" who was on the phone at the time. She either didn't believe him or didn't understand him, for she continued her telephone conversation and said nothing to Michael. So Michael ran back to the pool where Charles had gone down and dived in to confirm his belief that Charles was in danger. Charles was then lying on the bottom.
Hurrying out of the pool, Michael again told those nearby "there was a boy lying on the bottom of the pool." Because the *141 water was unclear, impairing visibility, he tried to persuade one of them to go down and check, but was refused. Michael then went to the lifeguard a second time, but his plea for help was again ignored. He therefore ran back to the dressing rooms once more and shouted for help again. When he saw that the ticket woman was still on the phone, he ran back to the pool and dived in. Charles was still on the bottom, and, being unable to rescue him because he could not swim well enough, Michael surfaced again.
At this time Elvin Dalcourt, manager of the pool, having overheard Michael's plea for help on his last trip to the dressing rooms, ran from the dressing rooms to the pool, dived in and brought Charles' body to the surface.
Artificial respiration was administered and the Baton Rouge Fire Department was summoned. All efforts to revive Charles were unsuccessful. Fifteen or twenty minutes after the removal of Charles' body from the pool, the Assistant Coroner of East Baton Rouge Parish arrived and pronounced him dead from drowning.
Defendants assert that the parents of the deceased cannot recover because their son Charles was guilty of contributory negligence. They cite McGuire v. Louisiana Baptist Encampment, 199 So. 192 (La. App.1941) to support their argument that a fifteen-year-old boy who goes into deep water knowing that he cannot swim is guilty of contributory negligence.
The facts of the McGuire Case are entirely different from the facts in the case at bar. In the McGuire Case a fifteen-year-old boy took a skiff without the knowledge or permission of the authorities at a summer camp he was attending and, with other companions, rowed out into Lake Pontchartrain. While swimming almost a mile from shore the boy drowned. In that case it was shown that the boy had been told by the camp authorities that swimming would only be permitted in a roped-off area, during prescribed hours and under supervision of lifeguards. The McGuire decision is, therefore, not persuasive here.
In tort suits each case must, as a rule, be judged upon its own peculiar facts and circumstances. Nature does not always impart the same maturity and strength of judgment at the same age, and we are not, therefore, prepared to say that in every instance, under all circumstances, a child of fifteen is capable of legal fault.
We do know, however, that the deceased Charles Williams was possessed of normal intelligence, reason and physical capability, and we are prepared to hold, under the circumstances, that he was aware of the danger and he exposed himself unduly to the risk involved by venturing into the deep water of the pool knowing he could not swim. Charles was, therefore, guilty of contributory negligence.
Ordinarily contributory negligence would bar plaintiffs' recovery. But the last clear chance doctrine has been approved in this state and this humanitarian rule of law, where applicable, forms an exception to the dogmatic approach which denies recovery on account of contributory negligence. Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); Rottman v. Beverly, 183 La. 947, 165 So. 153 (1936); Hillyer, Comparative Negligence in Louisiana, 11 Tul.L.Rev. 112 (1936).
Thus it is not true in a strict legal sense that a plaintiff is barred from recovery under any and all circumstances merely because he was guilty of negligence which continued down to the moment of the accident which caused his injury. Where a plaintiff negligently puts himself in a place of danger and his negligence and danger are actually discovered by defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent acts if he can.
*142 In the application of this doctrine, it is pertinent and material to ascertain whether the defendant could, after discovering plaintiff's peril, have averted the accident by the exercise of due diligence. If he could have averted the accident by the exercise of due diligence and failed to do so, his negligence in that respect is considered the proximate cause of the injury and the plaintiff's negligence the remote cause, and the plaintiff may recover although his negligence continued to the instant of the accident. Jackson v. Cook, supra.
In advancing the argument that the last clear chance doctrine does not apply to the case at bar, defendants assert that plaintiffs have not established a principal element of that doctrine, that is, plaintiffs have not established that defendants could have avoided the drowning by the exercise of due care. Restated, the argument is that when Michael Yates told the lifeguard Green that Charles Williams was on the bottom of the pool, Charles was dead, and nothing Green could do would alter that fact, which is to say, the lifeguard could not have averted the death of Charles Williams.
We do not agree that the record supports a finding that Charles Williams was dead and beyond rescue when Michael Yates first ran to the raised platform where the lifeguard Green was stationed. As we appreciate the record, less than two minutes elapsed from the time Michael first saw Charles struggling on the bottom of the pool until the moment Michael told Green that Charles was drowning. From our study of the record, there was still time for Green to dive into the pool and rescue Charles before he died.
These conclusions are based upon the testimony of the Coroner who was of the opinion that a person will live from two to ten minutes if submerged in water, depending upon the physical constitution of the individual, and Michael Yates' testimony that it took him only 35 seconds to run from the spot where Charles was drowning to the lifeguard platform. It is reasonable to conclude from this evidence that Green could likewise have reached Charles in 35 seconds and, therefore, Charles would not have been submerged more than two minutes when Green reached him, had Green responded promptly to Michael's plea. Of course, we realize that some time was consumed from the moment when Michael discovered Charles on the bottom until he climbed out of the pool, tried to alarm others nearby and then decided to go to the lifeguard. But the record shows that this action was fast and two minutes provided time for the entire series of events to occur.
What happened thereafter until Dalcourt recovered the body of Charles Williams consumed much more time, but the first discovery of the perilous condition of Charles Williams was, or should have been, when the lifeguard was first warned. It was at that moment when the opportunity presented itself to extricate Charles from the danger to which he had exposed himself. It was at that time when the lifeguard Green violated his duty to a patron of the poola duty to remain alert and aware of any exposure to danger of the young children who had been entrusted into his care.
We recognize the duty of care a lifeguard owes to patrons at a public swimming pool to be more than the standard of care required of ordinary persons. A lifeguard, by training and experience, is expected to be prepared at a moment's notice to rush to the rescue of those in danger of drowning. His is not an obligation which can be discharged by inattention to the activity in the pool and a lack of the awareness of the serious nature of the responsibility imposed upon the position.
The pool was not crowded on this fateful day and the lifeguard should have heeded the call for help and investigated the claim that a boy was drowning. See Rome v. London & Lancashire Indemnity Company of America, 169 So. 132 (Orl. *143 App.1936). He cannot fail to see and to appreciate a peril which would have been apparent had he looked. Franicevich v. Lirette, 241 La. 466, 129 So.2d 740 (1961); Fontenot v. Freudenstein, 199 So. 677 (La.App.1941).
"The rules or standards of the law of tort * * * represent that conduct below which a man can not act in the community without becoming responsible for resultant damage." Stone, Tort Doctrine in Louisiana: The Materials for the Decision of a Case, 17 Tul.L.Rev. 159, 160 (1942).
Based upon these conclusions the lifeguard's negligence was the proximate cause of the death of the minor Charles Williams, and, under principles of respondeat superior, the East Baton Rouge Parish Recreation and Park Commission is solidarily liable with Charles A. Green the lifeguard's father for the negligence of their employee in the course and scope of his employment.
The father of the minor lifeguard complains that the trial court and the Court of Appeal erred in holding him responsible for the torts of the gainfully employed minor whose employer was, at the same time, vicariously liable for the tortious conduct of the minor. The father argues that the result reached creates a situation in the law where both the parent and the employer have authority, control and responsibility at the same time.
By Article 237 of the Civil Code, in the chapter dealing with paternal authority, it is provided that "Fathers and mothers are answerable for the offenses or quasi-offenses committed by their children, in the cases prescribed under the title: Of Quasi-Contracts, and of Offenses and Quasi-Offenses." By Article 2318 of the Code it is provided that "The father, or after his decease, the mother, are responsible for the damage occasioned by the minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons. The same responsibility attaches to the tutors of minors." See also Johnson v. Butterworth, 180 La. 586, 157 So. 121 (1934).
We think the liability of the parent under these articles is vicarious and if the child is old enough to be capable of fault and is in fact at fault, the liability of the parent is fixed; provided, of course, the minor is residing with the parent at the time. Toca v. Rojas, 152 La. 317, 93 So. 108 (1922). Cf. 2 Planiol, Traite Elementaire de Droit Civil, Part 1, Nos. 907-910 (11 ed. 1939) (An English Translation by The Louisiana State Law Institute (1959)). There are cases in our jurisprudence where the liability of the parent is said to be suspended when a minor is lawfully summoned to serve in a posse comitatus, Coats v. Roberts, 35 La.Ann. 891 (1883), or in the armed forces, Simmons v. Sorenson, 71 So.2d 377 (La.App. 1954); Redd v. Bohannon, 166 So.2d 362 (La.App.1964). The instant case is not one where the authority of the state has superseded the parent's authority, hence the law will not permit the parent to avoid responsibility for the torts of his minor child.
After judgment was rendered in the trial court on September 14, 1966 the Recreation and Park Commission filed an appeal on September 23, 1966 from the judgment which condemned the Commission in solido with Charles A. Green to pay $2,500 to each parent of the deceased. The minutes of the trial court reflect that this appeal was "on motion of counsel for defendants", whereas in fact counsel for Charles A. Green did not join in that motion and was unaware of the appeal until sometime later. We shall treat this as an appeal by the Commission only as the Court of Appeal recognized that it should be. The appeal entered by the Commission was answered by plaintiffs on October 20, 1966 seeking an increase in the award. Later, on December 19, 1966, the defendant Green entered his own appeal, which was never answered by plaintiffs.
*144 In its per curiam opinion on rehearing disposing of Green's contention that the Court of Appeal could not increase the award in favor of plaintiffs because plaintiffs had not answered Green's appeal, the Court of Appeal found that the Commission's appeal necessarily brought before the court the issue of its solidary liability with the codefendant Green. Accordingly, the court reaffirmed the increase in the award to plaintiffs from $2,500 to $10,000 to each parent making the increases applicable to both defendants.
Green's position is that since his codefendant, the Commission, failed to appeal against him, and since plaintiff did not answer his appeal, the increase in the award is not applicable to him.
Article 2133 of the Code of Civil Procedure provides:
"An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record, whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him and of which he complains in his answer."
No one has appealed against the defendant Green and no one has answered the appeal taken by him. Under these circumstances there can be no increase of the award against Green. This result is provided for in Article 2133 in language which is clear and unmistakable.
Cases relied upon by the Court of Appeal to reach a contrary result are inapplicable here. Those decisions (Emmons v. Agricultural Insurance Co., 245 La. 411, 158 So.2d 594 (1963); Murry v. Bankers Fire & Marine Insurance Company, 198 So.2d 532 (La.App. 1967); Fontenot v. Grain Dealers Mutual Insurance Co., 168 So.2d 478 (La.App. 1964) and Vidrine v. Simoneaux, 145 So.2d 400 (La.App.1962)) are predicated upon Civil Code, Article 2103, giving solidary obligors the right of contribution, and upon fact situations in which there was a third party demand against the codefendant, or in which the facts revealed that the appeal of one of the codefendants specifically sought a change in the judgment against the other codefendant and made him appellee on the appeal. None of these conditions have been fulfilled here.
We see no reason to alter the judgment of the Court of Appeal on quantum, except by limiting the award against the defendant Charles A. Green to the amount he was condemned to pay in the trial court judgment and casting the Commission individually for the increase.
For the reasons assigned there is judgment in the sum of $10,000 in favor of each of the plaintiffs, James B. Williams and Olevia Williams, against the defendants, East Baton Rouge Parish Recreation and Park Commission and Charles A. Green in solido, to the extent of $5,000 and against East Baton Rouge Parish Recreation and Park Commission individually for the balance due said plaintiffs, or the sum of $15,000. As herein amended the judgment of the Court of Appeal is affirmed. Costs to be apportioned between defendants.
HAMITER, J., concurs in the result.
HAMLIN, Justice (concurring in part and dissenting in part).
It is my view that at the time the minor Jaural Leopold Green, approximately twenty years of age, failed to give the care a lifeguard owes the patrons at a public swimming pool and was guilty of the negligence not remaining alert and aware of any exposure to danger of the young children who had been entrusted to his care which has been found to be the proximate cause of the drowning death of the minor *145 Charles Edward Williams, he was neither supervised nor controlled by either of his parents. I do not believe that under the circumstances of this case Green's father should be held liable in damages for the minor's wrongful actions.
The facts of record reflect that Green was an employed lifeguard at the Brooks Park Swimming Pool, said pool being operated by the East Baton Rouge Parish Recreation and Park Commission. He was an employee and had been tested by his employer; he had passed the tests given by the American Red Cross; his credentials were recited on cards, and he had demonstrated these cards to his employer. Green was also a swimming instructor. He was on duty at the time the instant death occurred; his help was sought when young Williams' plight was discovered by Michael Yates. He failed to render assistance when needed, thinking that Yates' plea for help was a trick. At the time of the accident, Green was on his employer's premises; he was controlled not by his parents but by his employer; he was remunerated by his employer.
"While it is said that at common law there are four elements which are considered upon the question whether the relationship of master and servant exists, namely, the selection and engagement of the servant, the payment of wages, the power of dismissal, and the power of the control of the servant's conduct,the really essential element of the relationship is the right of controlthe right of one person, the master, to order and control another, the servant, in the performance of work by the latter, and the right to direct the manner in which the work shall be done. It is, moreover, essential that the master shall have control and direction not only of the employment to which the contract relates, but also of all of its details, and if these elements of control and direction are lacking, no relationship of master and servant exists. The test of the employer-employee relation is the right of the employer to exercise control of the details and method of performing the work. * * *" 35 Am. Jur. Master and Servant, Sec. 3, pp. 445-446.
In the case of Redd v. Bohannon, La. App., 166 So.2d 362, it was aptly stated:
"* * * the basis of the parental liability rests upon the parent's legal right to control and supervise the actions of a minor of whom he has legal custody. See also Planiol, Civil Law Treatise (LSLI Translation, 1959) Volume 2, Section 909, discussing source article of LSA-CIVIL CODE, Article 2318: "In truth, responding for the act of a minor is not responsibility for the act of another, but for one's own act; a person is himself at fault, for not having supervised with sufficient strictness the minor confided to his care.'"
No case directly in point has been cited to this Court by counsel. LSA-C.C. Art. 2318, provides that: "The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons." In the instant case, Green was not placed under the care of the East Baton Rouge Parish Recreation and Park Commission. His parents surrendered, not delegated, their control and supervision to the Commission. During Green's working hours, he owed nothing to his parents; his obligation was to his employer. Such circumstances clearly indicate to me that the parents' control was interrupted and suspended.
Green was neither a student nor an apprentice. His parents had not trained, examined, or instructed him. He was working for money and was at the beck and call of the East Baton Rouge Parish Recreation and Park Commission when on duty. It is therefore apparent to me that Green's father is not responsible for his negligence *146 and should suffer no liability for his actions.
In this modern day and time, thousands of minors are employed in department stores, grocery stores, hotels, restaurants, barber shops, garages, theatres, and other commercial establishments. Many young people act as counsellors at summer camps. Reason dictates that the majority opinion creates a hardship which could deter the useful and gainful employment of minors. Green was not wanting as a son. He was wanting only as an employeeas a lifeguard.
For the reasons above stated, I respectfully dissent from that part of the majority opinion which holds Charles A. Green liable in damages for the negligence of his son Jaural Leopold Green.
SANDERS, Justice (concurring in part and dissenting in part).
The judgment in favor of plaintiffs, in my opinion, is eminently correct. The lifeguard was guilty of gross negligence, having a causal relation with the death of plaintiffs' son.
The son's contributory negligence is no bar to recovery, because under the facts, the lifeguard had a last clear chance to avoid the fatal drowning but failed to do so.
I have some doubt about the liability of the lifeguard's father since the lifeguard was regularly employed by The East Baton Rouge Parish Recreation and Park Commission. But, assuming such liability, I dissent from that portion of the judgment which denies the Recreation and Park Commission's right of contribution against its co-defendant for the appellate award increase.
LSA-C.C. Article 2103 provides:
"When two or more debtors are liable in solido, whether the obligation arises from a contract, a quasi contract, an offense, or a quasi offense, it should be divided between them. As between the solidary debtors, each is liable only for his virile portion of the obligation.
"A defendant who is sued on an obligation which, if it exists, is solidary may seek to enforce contribution, if he is cast, against his solidary co-debtor by making him a third party defendant in the suit, as provided in Article 1111 through 1116 of the Code of Civil Procedure, whether or not the third party defendant was sued by the plaintiff initially, and whether the defendant seeking to enforce contribution if he is cast admits or denies liability on the obligation sued on by the plaintiff." (Italics mine.)
The Article permits, but does not require, a third party demand to enforce contribution against a co-defendant. In the absence of a third party demand, a defendant's appeal brings before the appellate court the issue of contribution against a co-defendant liable in solido with appellant. Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594; Murry v. Bankers Fire & Marine Insurance Company, La.App., 198 So.2d 532; Vidrine v. Simoneaux, La.App., 145 So.2d 400; 24 La. L.Rev. 308.
I agree that the award in favor of plaintiff cannot be increased against Green, since the plaintiff filed no answer to the appeal taken by him. LSA-C.C.P. Art. 2133.
But, the defendant Recreation and Park Commission did appeal; hence, both defendants were before the Court of Appeal for the determination of rights to contribution as between the defendants. By virtue of writs, both defendants are in this Court. I am of the view the increased award in favor of plaintiff should be against the East Baton Rouge Parish Recreation and Park Commission alone, but the Court should recognize the Commission's right of contribution against its co-defendant for one-half of the award.
*147 For the reasons assigned, I concur in part and dissent only from that portion of the judgment denying contribution.
BARHAM, Justice (concurring).
I am in full accord with the majority opinion, but since Mr. Justice Sanders expressed some doubt about the father's liability because of the son's employment and since Mr. Justice Hamlin has dissented on that very point, I feel compelled to express my view in this regard.
The liability of the father in the instant case arises under Civil Code Articles 237 and 2318, as follows:
"Art. 237. Fathers and mothers are answerable for the offenses or quasi-offenses committed by their children, in the cases prescribed under the title: of Quasi-Contracts, and of Offenses and Quasi-Offenses."

"Art. 2318. The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons."
Civil Code Article 2318 has departed in an important particular from its source, Article 1384 of the Code Napoleon. Paragraph 2 of Code Napoleon Article 1384 provides:
"The father, and the mother after the decease of her husband, are responsible for the injury caused by their children being minors and residing with them * * *."
But this liability is greatly qualified by the last paragraph of that article, which states:
"The responsibility above mentioned is incurred, unless the father and mother * * * can prove that they were not able to prevent the act which gives rise to such responsibility."
As pointed out by Planiol, Article 1384 of the French Code establishes a presumption of fault against the persons enumerated. 2 Pt. 1 Planiol, Treatise on the Civil Law (Louisiana State Law Institute tr. 1959), No. 909A, p. 508. Our Article 2318 omits the exculpating clause and imposes absolute legal liability upon the parent for the damage occasioned by the "offenses or quasi-offenses" of his minor children. As stated in Johnson v. Butterworth, 180 La. 586, 613, 157 So. 121:
"In France, as we have said, the parental authority itself makes the parent responsible for a tort committed by his minor child, unless the parent proves that he was unable to prevent the act that caused the damage. * * * But, in Louisiana, the parent is responsible for a tort committed by his minor child, even though the parent could not have prevented the act that caused the injury. * * *" (Emphasis mine.)
Under Louisiana law the liability of a parent for the torts of his minor child does not depend upon the parent's retention of control and direction of the child, although there are contrary statements in our jurisprudence. In Succession of Burns, 199 La. 1081, 7 So.2d 359, the court referring to obiter dictum in Cleaveland v. Mayo, 19 La. 414, said:
"The responsibility placed on the parent under Article 2318 of the Revised Civil Code is based on the ground that the person having control of the minor could have prevented the tortious act and did not. * * *" (Emphasis mine.)
It is apparent that the court overlooked the omission from our Article 2318 of the exonerating phrase ("not able to prevent") contained in Article 1384 of the Code Napoleon. The distinction between the French and the Louisiana law is that the former creates a legal presumption and the latter imposes absolute liability.
*148 It was correctly stated in Sutton v. Champagne, 141 La. 469, 75 So. 209:
"* * * It seems illogical and hard that a mother should be liable in damages for the consequences of the act of somebody else in intrusting a dangerous instrument to her inexperienced child out of her presence and without her knowledge. * * * The solution of the problem must be that, while she is liable to the plaintiff, she has her recourse over against the person who by his act brought the responsibility upon her; and we shall so decide."
The master-servant theory is not applicable in determining the liability of a parent for the damage occasioned by his minor child since this liability is specifically defined under Civil Code Article 2318, and the common law theory of parental responsibility is inapplicable since it is like neither the French nor the Louisiana codal doctrine.
Toca v. Rojas, 152 La. 317, 93 So. 108, quoted from Coats v. Roberts, 35 La.Ann. 891, the statement that "Paternal responsibility is the consequence and offspring of the paternal authority", and then stated that although the father may delegate some of his authority, he cannot permanently divest himself of any of the paternal authority by contract or otherwise. The majority in the instant case correctly states that the only exceptions are those cases where the State has exercised its sovereign right and power and has superseded parental authority.
We need not be concerned that this doctrine is overly onerous since there is reserved in the parent the right of recourse against those in whose charge a child is placed if their negligence in supervision, control, and direction created the liability. Whether the holding in the instant case is conducive to modern-day practices of employment of minors or is in accord with our own personal conceptions of the validity or soundness of the law, the codal mandate is clear and unambiguous. Unless or until a change is effected by the Legislature, our law imposes absolute liability upon the parent for the tort of the minor.