## No. 3360.

### HEIRS OF E. A. JOHNSON *v.* BRADISH JOHNSON.

In this case, it is shown that the heirs of George W. Johnson ratified and confirmed his will; that they were recognized and put in possession of their respective shares; that his succession has been fully administered; that the dispositions of the will were carried into execution as fully as it was possible, and that his executors have been discharged. After all these proceedings, and in the face of these solemn acts, none of the heirs can now be heard, when they seek to annul the will in any of its parts.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley, J. Leovy, Monroe & Hart*, for plaintiffs and appellants. *Lea, Finney & Miller, J. A. Campbell*, for defendant and appellee.

MORGAN, J. George W. Johnson died in September, 1856. He owned large estates in New York and in Louisiana.

Forming part of his possessions in this State, was a tract of land known as the Woodland plantation, situate in the parish of Plaquemine, of which he owned the eleven-sixteenths. The other five-sixteenths, belonged to his brother, Bradish Johnson. He also owned twenty-five slaves in his own right, twelve slaves in common with his brother Bradish, and the eleven-sixteenths of one hundred and sixtyone others.

He died without leaving any forced heirs, and bequeathed his property to his brothers. To Bradish he gave the Woodland plantation and all the improvements thereon. Upon this bequest he imposed a charge. This was, that after enjoying the fruits and revenues of this plantation with the result of the labor of all the slaves thereon, for five years, he was to liberate them all, send them to Liberia, and give them each fifty dollars.

His will was accepted by his heirs as a just disposition of his property, and in two separate deeds, made at different periods, they ratified the same. Under the will and in virtue of these acts, each heir was put in possession of the share which was coming to them.

His heirs were three brothers. It is the heirs of one of these brothers who are the plaintiffs in this suit.

In 1857, the Legislature of Louisiana passed a law prohibiting the emancipation of slaves.

In 1858, J. D. Johnson and E. A. Johnson (father of the present plaintiffs) instituted suit against Bradish Johnson, in which they alleged that the provisions of George Johnson's will by which he directed the emancipation of his slaves were null and void, the same being prohibited by law. They prayed that all of the provisions of his will relating to the Woodland plantation and the negroes thereon might be declared null and void, as contrary to the laws and policy of the State, and they prayed to be decreed to be the owners each for one-third thereof. This suit was decided by the Supreme Court to be premature. The opinion was read on the fifteenth of June, 1859. It has not been reported.

Subsequently, John Johnson instituted another suit in which he declared that Bradish Johnson, in defiance of the laws of the State, contemplated the emancipation of the slaves mentioned in George Johnson's will, and, averring that he feared they would be removed out of the State, applied for and obtained an injunction directed against him prohibiting him from so doing. This suit remained on the docket until twelfth November, 1861, when it was dismissed.

The slaves were never sent to Liberia, and they were not emancipated by Bradish within the five years as required by the will. The heirs of E. A. Johnson, claiming through their father, ask that they be decreed to be the owners of the one third of the eleven-sixteenths of the Woodland plantation, and that Bradish Johnson may be compelled to account to them for the revenues thereof since he has been in possession of the same under the will. By a special agreement the rents and revenues are disconnected from this suit, and the only question before us is, the title to the land.

Plaintiffs contend that inasmuch as the terms of the will were not complied with, and inasmuch as the terms of the will were the conditions of the legacy, the legacy lapses and the property falls into the mass of the succession, to be divided equally among the heirs.

Every one who was in Louisiana at the time knows, that it would have been impossible for any one to have emancipated a slave in September, 1861, and that it would have been equally impossible to have sent one, much less one hundred and ninety-eight to Liberia.

Late in April, 1862, the United States forces took possession of New Orleans and the neighboring country. By a military order, issued in May, 1863, the statute of 1857 was declared never to have been in force during the occupancy of the country by the federal troops, and owners of slaves were authorized to manumit them on presenting a petition to that effect, to any court of record.

In March, 1864, Bradish Johnson filed a petition in which he prayed leave to emancipate the slaves mentioned in his brother's will. The application was granted. The slaves were freed.

It is contended that this proceeding was unnecessary, inasmuch as two months before, General Banks, the then military commander here, had declared all slavery laws null and void. This does not follow, but it is not necessary that the matter should be inquired into.

In the construction and application of testamentary dispositions, the object of the testator is one of the first things to be ascertained. What was the object of George Johnson with regard to the slaves which he owned? Was it to send them to Liberia? In our opinion this was a mere incident to the bequest, and made simply in what he considered might be the interest of those to whom he desired to be bountiful. His main object we think was the emancipation of those whom he had held in bondage and whose labor had contributed to his wealth. His principal end was to make them free; the place where they were to enjoy their freedom was a very secondary consideration. They were freed, and thus his object was accomplished. They were freed also by the act of his legatee, and thus the provisions of his will were carried out. They were not sent to Liberia, it is true, but this is not the fault of the legatee. In this regard he tendered to those who wished to go, the means stipulated in the will, which they declined. Besides, this was a stipulation in their own behalf, and not one in which the heirs have any interest; for it would hardly be contended, we think, that if they could have been emancipated under the laws of Louisiana when they would have been entitled to their freedom under the will, with permission to remain in Louisiana, and they had been emancipated and had refused to go to Liberia, that this portion of the will would have been set aside. The first privilege of freedom is the right to choose a home from out the world; it might have been worse than slavery to them to force them from the place of their birth, to break up their associations and to sunder even such weak ties as were socially known to them, and to drive them across the seas, among strangers, and in a distant land. Being free to go or not to go, was the question which their own choice alone could determine, and whether they went or staid was not a matter in which the heirs of their liberator had any say. It is their ground of action against the legatee to force a compliance with the terms of the will, if they choose to occupy it, but it is no reason why his bequest should be set aside.

Beyond this, all the heirs of George Johnson ratified and confirmed his will, as has been seen; they were recognized and put in possession of their respective shares; his succession has been fully administered, and his executors have been discharged. After all these proceedings,

and in the face of their solemn acts, the heirs can not, we think, be heard, when they seek to annul the will in any of its parts.

Judgment affirmed.

### ON APPLICATION FOR REHEARING.

LUDELING, C. J. In the brief filed in support of the application for a rehearing in this case, it is suggested that Mr. Justice Morgan, who pronounced the judgment of the court, should have recused himself, and reference is made to the statute (Sec. 1922 R. S.), which declares that "whenever, in any case before the Supreme Court, or any other court having appellate jurisdiction, the judgment appealed from shall have been rendered, in the first instance, by any judge of said appellate court, at a time when he was judge of the court of original juris diction, it shall be the duty of said judge ex officio to recuse himself, without it being necessary that a motion be made to that effect by any of the parties."

The statute has not the remotest bearing in the case before the court.

The judgment appealed from was not rendered by Judge Morgan, but by Judge Cooley, judge of the Sixth District Court, of which Mr. Justice Morgan never was judge. While judge of the Second District Court, Judge Morgan decided a case growing out of the will of George Johnson, but that case was decided by this court years ago, and it is a totally different case from the one now under consideration; the causes of action and the things claimed in the two suits were different.

The other grounds for a rehearing have even less reason to support them than the foregoing, for if it be conceded that the agreement of fifteenth of December, 1857, did not embrace the Louisiana property, still, having decided that the testament was valid and that Bradish Johnson had discharged the obligations imposed on him by the will, it is of no consequence what the said agreement embraced.

The rehearing is therefore refused.