(65 South. 315)

No. 19983.

MORRIS v. ABNEY.

(April 27, 1914. Rehearing Denied May 25, 1914.)

*(Syllabus by the Court.)*

1. WILLS (§§ 115, 740*)—VALIDITY—WITNESSES—RATIFICATION OF VOID WILL.

A last will, not subscribed by the number of witnesses required by law, is a nullity. Where the heir at law treated such a will as

without effect, and was recognized as sole heir and as such was sent into possession of the estate by the decree of a competent court, and subsequently partially executed several of the legacies contained in the void will, *held*, that the ratification was only to the extent of the execution of each disposition, and the only legal effect of such ratification was to prevent the recovery by the heir of what had been paid or given.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 280–283, 1888–1895; Dec. Dig. §§ 115, 740.*]

2. WILLS (§ 740*) — RATIFICATION — VERBAL PROMISES.

Where a last will is a nullity for defects of form, it cannot be confirmed or ratified by the verbal promises of the heir at law.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1888–1895; Dec. Dig. § 740.*]

3. WILLS (§ 740*)—RATIFICATION—EFFECT.

Ratification as to one legatee does not profit other legatees.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1888–1895; Dec. Dig. § 740.*]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Ball, Judge.

Action by Mrs. Schumpert H. Morris against Mack Abney, executor. From judgment for plaintiff, defendant appeals. Reversed and dismissed.

Blanchard & Smith and Thomas C. Barret, all of Shreveport, for appellant. Alexander & Wilkinson, of Shreveport, for appellee.

LAND, J. Plaintiff sued to recover of the estate of Dr. John I. Schumpert the sum of $4,900 on the following alleged cause of action:

Dr. T. E. Schumpert, son of Dr. John I. Schumpert, died at his domicile in the parish of Caddo in the year 1908, leaving an estate worth over $100,000 after payment of all his debts.

Dr. T. E. Schumpert left a last will and testament, defective in form, by which he bequeathed the sum of $5,000 to the plaintiff, yet Dr. John I. Schumpert, the sole heir of the decedent, ratified and confirmed said last will, and promised many times and on various occasions to pay the said bequest made to the plaintiff, and in fact paid thereon the sum of $100.

Dr. J. I. Schumpert, as sole heir, took possession of all the property of his deceased son, amounting to over $100,000, and at his death the said Dr. J. I. Schumpert had on hand and in his possession parts of said property worth at least $50,000, yet failed and neglected to pay said legacy or debt, though promising often to do so.

Defendant filed an exception of no cause of action, which was referred to the merits, without prejudice, and defendant then answered substantially as follows:

That Dr. T. E. Schumpert, in the year 1908, undertook to make on his deathbed a last will and testament, but the paper he signed was absolutely null and void ab initio, and was never tendered for probate.

That Dr. J. I. Schumpert inherited the estate of his son, and was sent into possession of the same as sole legal heir.

Defendant denied that Dr. J. I. Schumpert ever acknowledged the paper signed by his son as the will of the latter, or ever ratified and confirmed the same.

Defendant denied that Dr. J. I. Schumpert ever promised the plaintiff to pay any supposed bequest made to her by his deceased son, or ever made her any payment of any sum on account of the same.

Defendant averred that Dr. J. I. Schumpert never recognized any natural obligation on his part to carry out the disposition of said void will, in favor of the plaintiff, never did carry out the same, and when he came to die he made no provisions for her in his last will and testament.

There was judgment in favor of the plaintiff, and the defendant has appealed.

The paper purporting to be the last will of Dr. T. E. Schumpert was written by a third person, and was signed by the testator and two witnesses. As the law requires five wit-

nesses to a will of this kind, the document was void for want of legal form.

The disposition of said defective will were as follows:

(1) To his father Dr. J. I. Schumpert, a lifetime interest in the home in which he then resided; and an allowance of $150 per month for his maintenance during his natural life.

(2) To his aunt, Mrs. Lizzie Cassidy, the sum of $5,000 in cash, to be paid as soon after his death as it seemed practicable to his executor.

(3) To his cousin, Mrs. Schumpert Morris, $5,000, to be paid into her hands by his executor.

(4) To his cousin, J. I. Kingsmore, $3,000, to be paid by his executor.

(5) To Albert Stear, $500, to be paid by his executor.

(6) To Noble Byrd Schumpert, home and land, 20 acres, near Fair Grounds, his father and J. J. Kinsmore each to have a life interest in said home; also $10,000 to be used in Noble's collegiate and medical education, and for his maintenance.

(7) To the Sisters then occupying and operating the Shreveport Sanitarium, the property known as such, and certain movables.

(8) To the Central High School his library.

(9) After payment of his debts and legacies, residue of his estate to go to Sisters for the building of a handsome and efficient Sanitarium in the city of Shreveport to be known as the "T. E. Schumpert Memorial."

Mr. Peter Youree of Shreveport was named as executor.

A few days after the death of Dr. T. E. Schumpert, his father and sole heir, Dr. John I. Schumpert, made a donation inter vivos of the six lots, with all the buildings and improvements thereon, known as the Shreveport Sanitarium to the Sisters of Charity of the Incarnate Word of Galveston, Tex.

The act of donation contains the following recital:

"This donation is made and accepted in pursuance of the last will of Dr. Thomas E. Schumpert, late of said parish and state, and because of his love and admiration for the said Sisters and to the noble and beneficent works they have done, and on condition that the said sanitarium shall be called and named the 'T. E. Schumpert Memorial Sanitarium,' and shall be maintained at the city of Shreveport," etc.

Mr. Peter Youree was named trustee, in the case of the sale of the property, to receive the price, and to see that the money was invested in another sanitarium in the city of Shreveport.

On the same day Dr. John I. Schumpert appointed Mr. Peter Youree as his agent and attorney in fact for the purpose of collecting the assets and settling the debts of the succession of Dr. T. E. Schumpert.

Mr. Youree testified that Dr. J. I. Schumpert frequently said that he would carry out the will as written by his son, and that, besides the donation to the Sisters of Charity, he delivered the library to the Central High School, and paid $250 on the legacy to Albert Stear.

Mr. Youree further testified that he had frequent letters from Mrs. Schumpert Morris about her legacy, and had frequent talks with Dr. John I. Schumpert about the same, and that Dr. Schumpert always said he was going to carry out the will of his son as written—was going to pay the legacy to Mrs. Morris, and also the one to his sister for $5,000. Mr. Youree further testified that the estate of Dr. T. E. Schumpert owed debts, and that Dr. John I. Schumpert never had the money to pay off the legacies.

Mrs. Beulah Oden (a cousin) testified that up to and prior to the death of Dr. J. I. Schumpert she and her husband had lived with him for 18 years, that she had "raised" Noble Schumpert, and that Dr. J. I. Schumpert in his last will had left her a legacy of $10,000, which had been paid.

The same witness testified that soon after the death of Dr. T. E. Schumpert a number of letters passed between her and the plaintiff relative to the latter's legacy, and the witness identified several letters as written by her at the instance of Dr. J. I. Schumpert in response to letters written by the plaintiff to him. In a letter of date July 16, 1908, in reply to one from the plaintiff, Mrs. Oden after referring to the will of Dr. T. E. Schumpert, and stating that "Cousin John" had carried (out) that part relating to the sanitarium, continued as follows:

"He left you five thousand also; Cousin John said as soon as he could settle up he will give you yours."

In another letter of date August 8, 1908, Mrs. Oden wrote:

"Your letter read and cousin John said he couldn't do but very little for you now will settle up everything this year there was so much improvements to make. I told him to send you at least one hundred dollars and will go down in the morning and have him do it then when next payment comes he can send another $100."

Mrs. Oden testified that Dr. Schumpert subsequently told her that he had sent the money. In another letter of date February 15, 1909, Mrs. Oden wrote, "Well Coz. S. Cousin John told me to tell you that he could do something for you in a little while," and in another without date, said, "Coz. John told me to say to you that he hoped when he come everything would be so he comply with Coz. Edgar's wishes."

In a letter of date September 13, 1909, Mrs. Oden wrote:

"I forgot to send you the money until to-day and whenever you get in a tight about your house just let me know I will do all I can in getting Cousin John to send it. Until he can settle up then he will pay you all, he is going to give you all your money."

It appears from Mrs. Oden's testimony that Mrs. Schumpert Morris came to Shreveport to visit Dr. J. I. Schumpert, and that the doctor and Mrs. Oden paid Mrs. Morris a visit at her home in Nashville, Tenn.

On cross-examination Mrs. Oden testified as follows:

"Were you present at any time when Dr. John I. Schumpert ever promised Mrs. Schumpert Morris that he would pay her that legacy?
"A. Yes, sir.
"Q. Where?
"A. At his home place and at her home place, and in Nashville.
"Q. Were you in Nashville?
"A. Yes, sir.
"Q. And you testify that you were present when Dr. Schumpert told her that he would pay her that legacy?
"A. Yes, sir.
"Q. Both at your house and in Nashville?
"A. Yes, sir."

The plaintiff testified that she made a visit to Shreveport in August, 1908, and had an interview with Dr. John I. Schumpert about her legacy, in the course of which he said he would pay her the money as soon as the vault was finished, and the remains of his son and his mother were placed therein, that later Dr. Schumpert visited her at Nashville, Tenn., and again promised to pay the legacy left her by his deceased son, and that *no one was present when either promise was made.*

L. H. Holt, a brother-in-law of Dr. J. I. Schumpert, testified in part as follows:

"I did hear him speak of Dr. T. E. Schumpert's will and the legacy left Mrs. Schumpert Morris of Nashville, Tenn., while on my visit to Dr. John I. Schumpert at Shreveport; he said he would pay Mrs. Morris the money left her, and also stated while on a visit to Nashville, Tenn., when he visited my home, that he would pay her the money."

Mr. J. D. Wilkinson, attorney for Dr. J. I. Schumpert, testified that, after having been advised that the will of his son was a nullity, Dr. Schumpert stated that he would carry out the terms of the will without its probation; and at his request wrote the act of donation from him to the Sisters of Charity of the Sanitarium property, after having Dr. Schumpert recognized by the court as

sole heir of Dr. T. E. Schumpert. It appears from Mr. Wilkinson's testimony that Dr. Schumpert in 1912, the last year of his life, prepared several wills, in one of which he left the plaintiff $3,000, and that he often told Mr. Wilkinson that he would carry out the terms of Edgar Schumpert's will as soon as he got the money.

The last will of Dr. J. I. Schumpert was made on April 26, 1912, and contained only two legacies, one of $10,000 to Noble Schumpert, and the other of $10,000 to Mrs. Beulah Oden. The remainder of his property, real and personal, was devised and bequeathed to the testator's heirs at law. The inventoried value of the estate, consisting nearly all in realty, was about $140,000.

Defendant objected to parol evidence to prove an assumption by Dr. John I. Schumpert of any debts or obligation in favor of the plaintiff by reason of the legacy to her in the void will of Dr. T. E. Schumpert. The court ruled that the evidence be received subject to the objection.

[1,2] The legacy in question was an intended gratuity, which never became operative because the intended testament of Dr. T. E. Schumpert was void for want of legal form. Hence the intended legacy never became a debt or obligation of his estate, and the alleged promise of his heir to discharge the legacy was purely gratuitous.

We find in the Civil Code the following provisions relating to the subject-matter under consideration:

"Art. 1757. A natural obligation is one which cannot be enforced by action, but which is binding on the party who makes it, in conscience and according to natural justice.

"Art. 1758. Natural obligations are of four kinds:

"1. Such obligations as the law has rendered invalid for the want of certain forms or for some reason of general policy, but which are not in themselves immoral or unjust.

"2. Such as are made by persons having the discretion necessary to enable them to contract, but who are yet rendered incapable of doing so by some provision of law.

"3. When the action is barred by prescription a natural obligation still subsists, although the civil obligation is extinguished.

"4. There is also a natural obligation on those who inherit an estate either under a will or by legal inheritance, to execute the donations or other dispositions which the former owner has made, but which are defective for want of form only.

"Art. 1759. Although natural obligations cannot be enforced by action, they have the following effect:

"1. No suit will lie to recover for what has been paid or given in compliance with a natural obligation.

"2. A natural obligation is a sufficient consideration for a new contract.

"Art. 1846.

"1. Although the party may have been ignorant of his right, yet if the contract, made under such error, fulfilled any such natural obligation as might from its nature induce a presumption that it was made in consequence of the obligation, and not from error of right, then such error shall not be alleged to avoid the contract. Thus, the natural obligation to perform the will of the donor, prevents the donee from reclaiming legacies or gifts he has paid under a testament void only for want of form."

Article 2274 of the Civil Code reads as follows:

"The confirmation, ratification, or voluntary execution of a donation by the heirs or assigns of the donor, after his decease, involves their renunciation to oppose either defects of form or any other exceptions."

In the case at bar, Dr. John I. Schumpert was advised that the will of his son was a nullity and could not be probated. He thereupon applied to the proper court, and was recognized by the decree as sole heir of his deceased son, and as such was sent into possession of all the property belonging to the estate. This judicial proceeding was a formal repudiation of the validity of the purported testament.

Dr. Schumpert's title to the estate was derived from the law, and, *as owner*, he made a donation to the Sisters of Charity *of a part of the same property* donated to them in the void will of his son. He also delivered the library of his son to the Central High School, and paid $250 on a legacy for $500. Dr. Schumpert lived for four years after the

death of his son, and during this time paid nothing on any other legacy, except perhaps $100 to the plaintiff. In his last will, Dr. Schumpert ignored all the legatees in his son's will, except his adopted son, Noble. In making the said donations Dr. Schumpert was moved, doubtless, by his appreciation of the natural obligation on him to execute the donations which his son had made in his void will, but Dr. Schumpert never confirmed or ratified said will, under which he was a mere pensioner. To have confirmed said will as a whole would have deprived Dr. Schumpert of the estate. Surely he had no such intention. Natural obligations cannot be enforced by action, and consequently the heir is left free to execute or not to execute the donations or other dispositions which his de cujus has made.

Of the four kinds of natural obligations specified in article 1758, the first three have their origin in contracts, but the fourth arises from donations, "defective for want of form only."

Article 1759 declares that natural obligations have legal effect in two cases:

"1. No suit will lie to recover what has been paid or given in compliance with a natural obligation.
"2. A natural obligation is a sufficient consideration for a new contract."

The first category applies to the fourth class of natural obligations.

The second category applies to the other three classes. The term "a new contract" cannot have any possible application to donations purely gratuitous, which contain none of the elements of a contract.

There can be no confirmation or ratification by the heir of a void will unless there be an *intent* on his part to confirm or ratify all of its dispositions.

Dr. Schumpert judicially claimed that the succession was intestate, and belonged to him as sole heir. This claim was allowed by the court, and he was sent in pos-

session. As owner of the estate, Dr. Schumpert, in memory of his son, elected to give some portions of his property to certain legatees. These were simply acts of beneficence, and not of confirmation of a will which he had treated as a nullity.

[3] This view disposes of the case. But we are of opinion that, as a matter of law, such benefactions had no other effect than to debar the donor from recovering the money or things paid or given. We have already given our reasons for this opinion.

Article 2274 of the Civil Code was taken from the Code Napoleon, under which it has been held that the execution of a null testament avails only the legatee in regard to whom the testament has been executed. Dalloz, Nouveau Code Civil 3, p. 476, Nos. 114, 115; Fuzier-Herman, Code Civil, 3, p. 447, No. 43. The last author also states that the voluntary execution of a null testament:

"N'emporte ratification de cet acte qu'autant que l'execution a eu lieu." Id., p. 445, No. 18.

The same doctrine is thus expressed by Carpentier-Du Saint:

"Et d'une maniere générale, que l'execution volontaire d'un testament infecté de nullité n'emporte confirmation de cet acte qu'autant que cette execution a eu lieu avec connaissance des vices dont il était infecté." Répertoire de Droit Français, 13, p. 220, No. 302. See Id., p. 219, Nos. 295–297.

The above quotation may be translated as follows:

"And, generally, that the voluntary execution of a testament, tainted with nullity imports confirmation of the act only as far as the execution has taken place with knowledge of the vices with which it was infected."

It is held in French jurisprudence that a testament may be ratified or confirmed by a formal recognitive act as in case of obligations. C. N. 1338; C. C. 2272. In the case at bar, there was no such act, or even a private writing of any kind, in which Dr. Schumpert expressed his intention to confirm the legacy to the plaintiff, who relies on verbal promises made to herself and others. It

would be very dangerous doctrine to hold that void legacies can be confirmed by verbal promises in any case, and more especially in a case where the alleged promisor is dead. As a verbal donation is a nullity, so a verbal confirmation of a donation can have no legal effect.

Plaintiff's counsel cite cases, where bankrupts were held liable on subsequent promises to pay, or debtors were held liable on promises to pay obligations barred by prescription.

We have endeavored to point out the difference between the natural obligation of an heir and the natural obligation of a debtor. As to the former, there never was even a commencement of an obligation, while as to the latter there was once a legal obligation, which the law recognizes as "a sufficient consideration for a new contract." Article 1759.

In the case of Ventress v. Brown, 34 La. Ann. 448, donations of slaves by private act were executed by delivery of the slaves to the donee, who retained possession of most of them until they were emancipated.

In Johnson v. Johnson, 26 La. Ann. 570, the will was probated and the heirs put in possession of their respective shares. Barrow v. Barrow, 38 La. Ann. 645, was decided on a similar state of facts. In Lemmon v. Clark, 36 La. Ann. 744, the confirmatory acts are not set forth, and the case went off on the proposition that the husband was estopped to deny the wife's title. In Deschapelles v. Labarre, 3 La. Ann. 522, the donee collated the value of the land conveyed by the informal donation to the heirs of the donor in accordance with the views of the donor, and the heirs accepted the collation.

In Bonneau v. Poydras, 2 Rob. 1, there was a voluntary execution of an act of compromise. In Cobb v. Parham, 4 La. Ann. 148, an award of arbitrators was subsequently executed by the parties. Other cases cited by the plaintiff refer to the ratification of contracts.

It is therefore ordered that the judgment below be reversed, and it is now ordered that plaintiff's suit be dismissed, with costs.