51 So.2d 73 (1950)
218 La. 795
BREAUX
v.
BREAUX.
No. 38697.
Supreme Court of Louisiana.
April 24, 1950.
On Rehearing January 9, 1951.
Rehearing Denied February 12, 1951.
*74 Numa F. Montet, of Thibodeaux, for plaintiffs-appellants.
Donald L. Peltier, Bernard J. Caillouet, Hubert A. Lafargue, Harvey Peltier, of Thibodeaux, for defendant-appellee.
McCALEB, Justice.
The original plaintiff, Mrs. Iselle Hebert Breaux, brought this suit against her son, Elmo J. Breaux, to set aside and annul a certain act of sale in authentic form, dated May 27, 1943, wherein she purported to convey to him, for a stated consideration of $1400 cash, three-fourths of a tract of land fronting on Bayou Lafourche which she had acquired as legatee under the last will and testament of her aunt, Mrs. Robert Champagne. It is alleged in the petition that the cash consideration set forth in the act of sale was a mere subterfuge as no consideration was paid; that the conveyance was the result of a fradulent scheme of defendant to deceive the public and plaintiff's other children to enable her to donate the property in disguise, and that it is void and should be set aside because, among other things, the donation is violative of Article 1533 of the Civil Code, in that it is provided in the act that plaintiff was to retain the use, enjoyment and occupancy of the property for the rest of her life.
The defendant admitted in his answer that neither the stated consideration of $1400 nor any other monetary consideration was paid by him to his mother but set forth that the act was nonetheless valid in that it was supported by a natural obligation on the part of his mother to convey the property to him as soon as he reached twenty-one years of age; he averred that this obligation resulted from an oral promise made by his mother to his Godmother, Mrs. Robert Champagne, at the time the latter executed a last will and testament in favor of his mother, bequeathing to her the real estate herein involved, subject to the condition that she would convey title to him when he became of age. Wherefore, he prayed that the alleged natural obligation be deemed a good and sufficient consideration to support the conveyance and that the action be dismissed.
Subsequently, by amended petition, plaintiff propounded interrogatories on facts and articles to the defendant relative to the nonexistence of a consideration for the sale. Defendant responded, reiterating his previous admission that there was no monetary consideration, but re-asserting the position taken by him in his answer that the conveyance was made by his mother in discharge of an alleged natural obligation which was a valid consideration for the deed.
Prior to the trial, Mrs. Breaux died leaving nine children, including defendant, as her sole and only heirs. After filing affidavits of their heirship, the brothers and sisters of defendant, eight in number, were substituted as parties plaintiff and the case proceeded to trial on the issues previously pleaded.
After hearing the evidence, the trial judge, believing that defendant's position *75 was substantiated in fact and law, dismissed the suit. Plaintiffs have appealed.
During the trial, counsel for plaintiffs made timely objection to the introduction by defendant of parol evidence in support of his allegations that there was a natural obligation on the part of his mother to transfer the land to him. This objection was based on the ground that oral evidence is inadmissible to vary or contradict the recitals of an authentic act. Articles 2236 and 2276 of the Civil Code. The rule is so firmly established that parol evidence cannot be received, as between the contracting parties, to show a consideration other than that stated in the act that citation of authority is hardly necessary. The Code speaks for itself. See Articles 2236, 2237, 2238, 2239, 2275, and 2276.
In the case of Robinson v. Britton, 137 La. 863, 69 So. 282, the Court, after remarking that the codal articles were so plain that the matter was not open to serious discussion, declared that Article 1900, which provides that a different consideration from that stated in the contract can always be shown, is without application to authentic acts where the suit is between the contracting parties, their heirs or assigns. Accordingly, in the absence of allegations of fraud or error, the recitals of an authentic act cannot be varied or contradicted by parol testimony. The only method by which either party to the contract can show that no consideration, or a different one than that specified was given, is by counter letter or by answer of the opposing party to interrogatories on facts and articles. Templet v. Babbitt, 198 La. 810, 5 So.2d 13.
But this rule affords no reason for concluding that plaintiffs' objection was well founded in the instant case. On the contrary, it is wholly inapplicable and avails plaintiffs nothing for, here, they are the parties attacking the authentic Act and they seek to probe the conscience of defendant by propounding interrogatories on facts and articles. The answer of the defendant to these interrogatories is not considered under the law as parol but rather as written evidence, thus performing the same office as a counter letter. Hoover v. Miller, 6 La.Ann. 204, and Semere v. Semere, 10 La.Ann. 704. And parol evidence was, of course, admissible to sustain the consideration pleaded by defendant in his answer to the interrogatories on facts and articles, as such proof was in support of the written title as amended by his answer.
An examination of the parol evidence offered by defendant to sustain his plea, that his mother transferred the property in contest in conformity with a verbal promise to his Godmother, Mrs. Champagne, is abundant and wholly sufficient to support a ruling that Mrs. Breaux understood it to be the intention of Mrs. Champagne that the property was "to go" to defendant after the former's death. Defendant and his wife testified that the former's mother told them on numerous occasions that it was the desire of Mrs. Champagne that the property be transferred to defendant when he became of age. However, none of the other witnesses, either for defendant or plaintiffs, corroborated the statement that defendant was to obtain the property from his mother when he became of age. They say that Mrs. Breaux informed them that it was Mrs. Champagne's desire that the property "would go" to defendant at his mother's death.
It is unnecessary, however, for us to determine the exact understanding between Mrs. Breaux and Mrs. Champagne forasmuch as the evidence is ample to warrant the conclusion that Mrs. Champagne, prior to or at the time she bequeathed the entire tract to Mrs. Breaux by her last will and testament, either requested or had an understanding with Mrs. Breaux that the property would eventually be transferred by the latter to the defendant before her death. This being so, the important question arises whether such a promise by the donee under a last will and testament imposes upon such donee a natural obligation to carry out the desires of the testatrix.
Initially, it is manifest that the verbal understanding between Mrs. Breaux and Mrs. Champagne was tantamount to the *76 creation of either a fidei commissum or a substitution reprobated by Article 1520 of the Civil Code, as it was a devise to Mrs. Breaux of a life estate in the property with the direction that it be thereafter transferred to defendant. And it is of no moment to the decision in the case whether the agreement be viewed as a trust in favor of defendant (and therefore a fidei commissum) or as a life estate in Mrs. Breaux with reversion of the property to defendant at her death (and hence a prohibited substitution), for the simple reason that, if the verbal bequest to defendant had been expressed in the will, either the entire bequest or that part creating a fidei commissum would have been void.[1] Succession of Reilly, 136 La. 347, 67 So. 27.
Our inquiry extends only to a determination of whether the creation of a fidei commissum or a prohibited substitution imposes upon the donee a natural obligation to execute the wishes of the testator. Article 1757 of the Code enumerates three kinds of obligations,imperfect, natural, and civil or perfect. It defines an imperfect obligation to be one operating "only on the moral sense," without being enforceable in law and it lists, as examples of this kind of obligation, gratitude, charity and "other merely moral duties". A natural obligation is defined in the article to be one "which can not be enforced by action, but which is binding on the party who makes it, in conscience and according to natural justice."
Article 1758 provides:
"Natural obligations are of four kinds:
"1. Such obligations as the law has rendered invalid for the want of certain forms or for some reason of general policy, but which are not in themselves immoral or unjust.
"2. Such as are made by persons having the discretion necessary to enable them to contract, but who are yet rendered incapable of doing so by some provision of law.
"3. When the action is barred by prescription, a natural obligation still subsists, although the civil obligation is extinguished.
"4. There is also a natural obligation on those who inherit an estate, either under a will or by legal inheritance, to execute the donations or other dispositions which the former owner had made, but which are defective for want of form only."
In considering Articles 1757 and 1758 of the Code, it is of primary importance to determine whether natural obligations, as defined in Article 1757, are restricted to those natural obligations particularly described in Article 1758, or whether those in the latter article are merely illustrative of the natural obligation defined in Article 1757. This question has already been answered by this Court in Succession of Miller v. Manhattan Life Ins. Co., 110 La. 652, 34 So. 723, 725, where it was said that "* * * our Code, art. 1757, draws sharply the line between mere moral obligations and such as it calls `natural obligations,' and denies to the former not only a right of action, but also `any legal operation'; and it proceeds to classify natural obligations into four distinct categories," and where it was concluded that, in order for a moral obligation to serve as a consideration of an onerous contract, it would have to fall within one of the distinct categories set forth in Article 1758.
The decision in Succession of Miller, supra, was quoted from with approval in Succession of Burns, 199 La. 1081, 7 So.2d 359, 363, where it was stated that the four categories of natural obligations "enumerated in Article 1758 of the Revised Civil Code are exclusive in their scope",[2] and that, since the obligation (there considered) did not fit in any one of those categories *77 but was merely a moral one, it would not "support a contract."
In view of the settled jurisprudence that the kinds of natural obligations described in Article 1758 of the Code are exclusive, it becomes necessary to examine the categories listed in the article in order to ascertain if the so-called natural obligation pleaded by defendant comes within one or more of the four classes.
Obviously, if the alleged bequest of Mrs. Champagne was void solely because it was oral and not in the form required for a donation mortis causa, there would have been a natural obligation under the fourth class set forth in Article 1758, for it provides that "There is also a natural obligation on those who inherit an estate, either under a will or by legal inheritance, to execute the donations or other dispositions which the former owner had made, but which are defective for want of form only." (Emphasis ours.)[3] But, apart from its nullity of form, the bequest in this case was void in substance as it contained either a fidei commissum or a substitution reprobated under our law. Therefore, there is no basis upon which to warrant a holding that there was a natural obligation on the part of Mrs. Breaux to transfer the property to the defendant, unless the oral disposition of Mrs. Champagne can be brought within the first three classes of natural obligations enumerated in Article 1758. A consideration of these kinds of natural obligations makes it at once plain that the second and third types described in the article, i. e., inability to contract because of minority, etc., or where an action is barred by prescription, are without pertinence here.
On the other hand, it would seem, at first blush, that the alleged obligation of Mrs. Breaux might be governed by the first class of natural obligations set forth in the article which includes "Such obligations as the law has rendered invalid for the want of certain forms or for some reason of general policy, but which are not in themselves immoral or unjust." However, on close examination and study of Article 1758 as a whole, it will be perceived that the first three classes of natural obligations enumerated in the article are limited to matters of contract and have no application whatever to donations or bequests which are placed exclusively within the fourth class. In fact, a perusal of the jurisprudence reveals that this Court has already decided the question. In Morris v. Abney, 135 La. 302, 65 So. 315, 318, a case relied on by defendant,the Court, in discussing the various articles of the Code dealing with natural obligations, i. e., Articles 1757, 1758, 1759, and 1846, stated: "Of the four kinds of natural obligations specified in article 1758, the first three have their origin in contract, but the fourth arises from donations, `defective for want of form only.'"
Thus, in the instant case, the obligation of Mrs. Breaux to her donor did not arise out of a contract, but solely as a result of her inheritance of the property by last will and testament. And (as above stated), if this obligation to execute the oral disposition of Mrs. Champagne in favor of defendant had been defective only as to form and not null in substance, it would have created a natural obligation on the part of Mrs. Breaux and her compliance therewith would have supplied a consideration supporting the transfer of the property. But the bequest being null in substance, while it might have created a moral obligation, cannot be sustained as a natural one and therefore the deed under attack can only be regarded as a donation in disguise, unsupported by consideration.
Counsel for defendant also relies upon Article 1759, which declares that no suit *78 will lie to recover what has been given in compliance with a natural obligation and that such an obligation is a sufficient consideration for a new contract. This article is, of course, applicable only to cases of natural obligations and, since we find that the conveyance in the instant case was not made in compliance with such an obligation, it is irrelevant here.
Being of the opinion that the purported sale by Mrs. Breaux to the defendant is without consideration and therefore a donation in disguise, it is an absolute nullity for the reason that, in the act, she reserved to herself for her life the enjoyment and usufruct of the property. Article 1533 of the Code provides: "The donor is permitted to dispose, for the advantage of any other person, of the enjoyment or usufruct of the immovable property given, but can not reserve it for himself."
The jurisprudence is well established that the reservation of usufruct to a donor of immovable property renders the entire instrument radically null and of no force and effect. See Creech v. Errington, 207 La. 615, 21 So.2d 761, and authorities there cited.
The judgment appealed from is therefore reversed, and it is now ordered that there be judgment in favor of plaintiffs, decreeing the purported deed from Mrs. Iselle Hebert Breaux to Elmo J. Breaux, dated May 27, 1943, and registered in the Conveyance Records of the Parish of Lafourche in Conveyance Book 107, page 116, bearing Entry No. 61647, to be null and void and it is ordered cancelled and erased from the records of that parish. Defendant is to pay all costs.
HAMITER, J., dissents and assigns written reasons.
HAMITER, Justice (dissenting).
The holding of the majority, as I appreciate it, is predicated on an erroneous premise that, "* * * the obligation of Mrs. Breaux to her donor did not arise out of a contract, but solely as a result of her inheritance of the property by last will and testament."
Mrs. Breaux was obligated not only to her donor, Mrs. Champagne, but also to and for the benefit of this defendant. Thus, under the agreement, she had promised Mrs. Champagne to transfer eventually to the defendant the bequeathed property. This being true, moreover, the obligation of Mrs. Breaux arose out of a contract, not solely as a result of the bequest contained in the will of the testatrix. Without the mentioned agreement and promise of Mrs. Breaux there would have been no obligation on her part (neither to Mrs. Champagne nor to this defendant), for the bequest would have been made either unconditionally or not at all.
But the promise of Mrs. Breauxher obligation to transfer the property to defendant was invalid. It, along with the bequest of which it became and formed a part, was and is reprobated by the provisions of Civil Code Article 1520 which treat of Substitutions and Fidei Commissa. In fact, both the obligation of Mrs. Breaux to transfer and the legacy in her favor were so invalid that the heirs of the testatrix could have prevented her, as well as this defendant, from obtaining possession of the property. Nevertheless, the assumed obligation's invalidity was for only a reason of general policy, which the law has deemed proper to adopt, not because it was immoral or unjust. It, therefore, was a natural obligation within the meaning and contemplation of Civil Code Article 1758, reading in part: "Natural obligations are of four kinds: 1. Such obligations as the law has rendered invalid for the want of certain forms or for some reason of general policy, but which are not in themselves immoral or unjust."
And being a natural obligation it is governed by Civil Code Article 1759 which recites:
"Although natural obligations can not be enforced by action, they have the following effect [effects]:
"1. No suit will lie to recover what has been paid, or given in compliance with a natural obligation.
"2. A natural obligation is a sufficient consideration for a new contract."
*79 From all of which I conclude that the district court correctly rejected the demands of plaintiffs.
I respectfully dissent.

On Rehearing.
MOISE, Justice.
As stated in the original opinion, the evidence preponderates in favor of an understanding between the testatrix, Mrs. Champagne, and her heir, Mrs. Breaux, that this property "would go" to the former's godchild, Elmo Breaux, on his attaining majority. This understanding was dehors the written testament.
We are confronted with one question: Are fidei commissa and substitutions included in the "donations or other disposition" made by a decedent, for the execution of which a natural obligation is imposed on the heir by Article 1758, paragraph 4, quoted in the original opinion? If they are, then the heir, in this case Mrs. Breaux, who has voluntarily carried out this natural obligation, is bound by her own act, under Article 1759, also quoted in full in the original opinion, notwithstanding that the intended beneficiary, Elmo Breaux, could himself not have maintained an action at law to enforce the performance of that obligation.
The original opinion, following the rationale of Morris v. Abney, 135 La. 302, 65 So. 315, restricted the first three paragraphs of Article 1758 to contracts, thus precluding a construction of the fourth and last with them. The theory underlying the perpetuation of that restriction was that the language in paragraph 4 of Article 1758"which are defective for want of form only" contains a "negative pregnant" that those dispositions or donations which might be defective in substance, though proper in form, ought not to be carried out in any event. There is, however, no need to search for the implication of a "negative pregnant", when paragraph 1 of Article 1758 contains an outright prohibition against the performance of an obligation which is immoral or unjust. Unless the standard provided by Article 1758, paragraph 1, is applied, there is a natural obligation on the part of the heir to carry out those "donations or other dispositions". The holding in Morris v. Abney is not controlling, since that case involved an action by a legatee under a will defective in form to enforce performance by the heir, which, being merely a natural obligation, was not enforceable at law; the restriction of the various sections of Article 1758 was not the basis of that decision, and hence constituted only dicta, which we do not choose to follow. Here the heir has already carried out the natural obligation; and, because of the nature of the disposition, it must be examined in the light of morals, justice and general policy.
The original opinion stated that this "understanding" was a fidei commissa or a substitution, and treated them as equally void in substance. But they are distinct, and this distinction has been ably set forth in 13 Tul.L.Rev., p. 71, as follows:
"A substitution is a donation of property to a donee, who holds title and possession for life, without the power of alienation, the property to be transmitted at his death to a second donee, originally designated by the donor. `Substitution' is translated by Cachard as `entail.' If not identical, it is analogous to a conveyance of a fee entail in the common law, and had the same historical origin, in that the device was created to perpetuate the power and wealth of great feudal families.
"A fidei commissum is created when property is given to one for the benefit of another, to vest in the latter at a given time or upon a stated condition."
Article 1520 of the Revised Civil Code contains a blanket prohibition against substitutions and fidei commissa, and reflects the disinclination of the codal redactors to permit the establishment of perpetuities and the entailment of estates, which had been the legacy of the feudal system to both the common law of England as well as the pre-Revolutionary law of France. However, the Code Napoleon permits the establishment *80 for the benefit of certain persons of "fiducies", which are analogous to the common-law trust. Articles 897, 1048, 1049, Code Napoleon. Furthermore, the Louisiana Legislature, beginning with Act No. 197 of 1920, and down to the present time, the current statute in force being Act No. 81 of 1938, LSA-RS 9:1791 et seq., has recognized the feasibility of a limited trust, whereof the fidei commissum (translated as a "leaving to faith") is the Civil law prototype. A substitution, on the other hand, involves a definite keeping of property out of commerce for an unlimited period of time, and is reprobated both by the civil law and by business custom.
The historical background of a fidei commissa was given to show the origin and the reasons for the law in former times and the modifications of the law now under the Trust Act. The original opinion [218 La. ___, 51 So.2d 77] stated that the understanding between Mrs. Breaux and Mrs. Champagne was a fidei commissa or a substitution. The understanding between Mrs. Champagne and Mrs. Breaux, according to the interrogatories propounded Elmo Breaux was that the property "would go" to him on his attaining majority. The obligation therein imposed was a natural one coming within the meaning of Article 1758 of the R.C.C., where it is stated that there are four kinds of natural obligations, one of which is "Such obligations as the law has rendered invalid for the want of certain forms or for some reason of general policy, but which are not in themselves immoral or unjust". We argued that the agreement and the execution of the agreement was not immoral or unjust. Mrs. Breaux having carried out this natural obligation to her son, it cannot now be rescinded either by her or her heirs under the provisions of Art. 1759, Par. 1, R.C.C.
For the reasons assigned, the judgment of the district court is affirmed. The right is reserved to plaintiffs to apply for a rehearing.
HAMITER, J., concurs in the decree.
McCALEB, J., dissents with written reasons.
LE BLANC, J., dissents.
HAWTHORNE, J., takes no part.
McCALEB, Justice (dissenting).
As I comprehend it, the prevailing opinion on this rehearing is predicated on the premise that the understanding between Mrs. Champagne and Mrs. Breaux, respecting defendant's eventual inheritance of the property in contest, was a fidei commissum and that, this being so, there was a natural obligation imposed upon Mrs. Breaux under the fourth paragraph of Article 1758 of the Civil Code to carry out the wishes of Mrs. Champagne as the disposition was void for want of form only because a fidei commissum is not "inherently evil, unjust, immoral, or against general policy."
Although the majority seem to indicate otherwise, it was never stated or contended in this case, either originally or on rehearing, that fidei commissa and substitutions were evil, unjust or immoral. It was simply declared in the original opinion that these testamentary dispositions are reprobated by Article 1520 of the Civil Code and that, therefore, it was unnecessary, for purposes of decision, to determine whether the verbal understanding between Mrs. Champagne and Mrs. Breaux was tantamount to the creation of a fidei commissum or a substitution for, in either event, the bequest would have been illegal. The opinion on rehearing, however, deems it important to determine the exact nature of Mrs. Champagne's verbal disposition and proceeds to decide (1) that it is a fidei commissum and (2) that it can be sustained as a natural obligation under paragraph 4 of Article 1758 because fidei commissa are not unjust or against general policy.
I cannot agree with either of these resolutions. In the first place, I am constrained to take issue with the observation of the majority that it was stated in the original opinion that there was an understanding between Mrs. Champagne and her heir, Mrs. Breaux, "that this property `would go' to the former's godchild, Elmo Breaux, on his attaining majority". Conversely, the original opinion sets forth that the parol evidence relied on by defendant was sufficient *81 to support a ruling "that Mrs. Breaux understood it to be the intention of Mrs. Champagne that the property was `to go' to defendant after the former's death" and it was asserted that, whereas defendant and his wife had testified that Mrs. Breaux had told them that it was Mrs. Champagne's desire that the property be transferred to defendant when he became of age, none of the other witnesses, either for the defense or plaintiffs, corroborated this evidence but that, on the contrary, they had stated that it was Mrs. Champagne's desire that the property "would go" to defendant at his mother's death. (Emphasis mine).
Hence, were it imperative to determine whether the disposition of Mrs. Champagne was a fidei commissum or a substitution, it is easy to see that it falls squarely into the category of the latter as the clearly preponderating and disinterested testimony shows that it was Mrs. Champagne's wish that the land be given to defendant after his mother's death.
But, even if it be assumed that the majority are correct in finding that the understanding between Mrs. Champagne and Mrs. Breaux created a fidei commissum, the conclusion that such a disposition is not inimical to public policy is, in my opinion, palpably erroneousfor fidei commissa are not only reprobated by the general law, Article 1520 of the Civil Code, but are specifically prohibited by Section 16 of Article 4 of the Constitution, as amended by Act No. 318 of 1944, save that the Legislature is given the power to authorize the creation of trust estates for a period not exceeding ten years after the death of the donor and under certain other conditions not present here. Surely, the Louisiana Trust Estates Act, Act No. 81 of 1938, permitting certain trusts for limited periods when created under specified conditions, does not effect a repeal of Article 1520 or a legalization of fidei commissa in entirety. If construed otherwise, the statute is unconstitutional.
Hence, any testamentary disposition of the type depended on in the instant case is reprobated being against public policy and, as such, cannot form the basis for a natural obligation under the fourth paragraph of Article 1758 of the Code.
The majority assert that the case of Morris v. Abney, 135 La. 302, 65 So. 315, is inapplicable to the case at bar and that the pronouncement contained thereinthat the first three paragraphs of Article 1758 of the Civil Code have their origin in contract whereas the fourth arises from donations defective for want of form only "constituted only dicta, which we do not choose to follow".
I readily concede that the case is not controlling insofar as the facts of this matter are concerned as Morris v. Abney involved a donation under a will void for want of form only, which was not executed by the legatee of the testator, whilst, here, the question presented is whether an executed disposition, reprobated in law, can supply consideration for an onerous contract on the theory that it is a natural obligation. But the decision in Morris v. Abney is clearly appropriate to the conclusion to be reached in this case because that opinion discusses and determines the proper meaning and application of Articles 1757, 1758 and 1759 of the Code, dealing with natural obligations, upon which this case must be decided. Albeit, counsel for defendant, who are now attacking Morris v. Abney, cited and relied on it as an authority in their favor when the case was presented on the original hearing.
Moreover, even if the deductions in Morris v. Abney relative to Articles 1758 and 1759 of the Code be considered as dictum, I know of no good reason why they should not be followed if they be correct. The prevailing opinion on rehearing merely states that the court does not choose to follow the alleged dicta. It does not declare that the legal principles announced by the Court are wrong or attempt to point out the error, if error exists.
In my judgment, the opinion in Morris v. Abney contains a comprehensive and well reasoned analysis of the Articles of the Civil Code which treat of natural obligations. The holding therein that the first three paragraphs of Article 1758 have their *82 origin in contract, whereas the fourth arises from donations defective for want of form only, is fully sustained by a thoughtful consideration of the Articles. As pointed out in the original opinion herein, the second and third paragraphs of Article 1758, relative to persons unable to contract and obligations barred by prescription, are without pertinence to this cause and the basic question is whether the alleged natural obligation of Mrs. Breaux can possibly be fitted into the first paragraph of the Article, since it obviously cannot be a natural obligation within the meaning of the fourth paragraph as the disposition was reprobated under our law and not void for want of form only.
The first paragraph of Article 1758, in defining natural obligations, reads: "Such obligations as the law has rendered invalid for the want of certain forms or for some reason of general policy, but which are not in themselves immoral or unjust".
In order to discern whether the natural obligations provided for under this paragraph have their origin in contract, the all important word is "obligations", as the clause is "Such obligations as the law has rendered invalid * * *". By reference to the preceding Article 1757 it will be seen that there are three kinds of obligations, imperfect, natural and civil or perfect. Manifestly, the lawmaker, in defining the first class of natural obligations in paragraph 1 of Article 1758, does not mean imperfect or moral obligations because those obligations produce no legal effect whatever. Succession of Miller v. Manhattan Life Ins. Co., 110 La. 652, 34 So. 723 and Succession of Burns, 199 La. 1081, 7 So.2d 359. Therefore, it seems plain that, when the Article refers to "Such obligations as the law has rendered invalid" for certain reasons, it means those obligations which would have been, but for their legal invalidity, perfect or civil obligations which are defined by Article 1757 as being one founded on contract.
If, as counsel for defendant argues, the obligations referred to in the above quoted paragraph include moral obligations as well as those resulting from contract, then Article 1757, declaring that moral or imperfect obligations are without legal operation, is rendered ineffective. Specifically, if all unenforceable obligations, whether they stem from contract or not, are to be included within the provisions of the first paragraph of Article 1758, then there is no basis whatever for the fourth paragraph of the Article or, for that matter, any other provisions on the subject. Using the fourth paragraph of Article 1758 as an example, it will be perceived that, if a natural obligation is imposed under paragraph 1 upon a legatee to execute the dispositions of the donor which are void for reasons of public policy, paragraph 4 is rendered hopelessly and utterly meaningless when it provides that a natural obligation exists to execute those donations "which are defective for want of form only."
Articles 1757, 1758 and 1759, being laws in pari materia, must, under Article 17 of the Code, be construed with reference to each other and in an effort to give effect to each separate provision; not to destroy it. By using this simple tenet of statutory construction, a sound and judicious conclusion is reached. I think it error to depart from it.
For these and the reasons given in the original opinion, I respectfully dissent.
Since the writing of this dissent I note that the majority opinion has been changed so as to hold that the case is governed by paragraph one of Art. 1758. However I deem further comment unnecessary.
NOTES
[1] For a full discussion of trusts, fidei commissa and substitutions, see article of Professor Eugene A. Nabors in 4 Tulane Law Review, pages 1-17 and 190-213, where all of the applicable jurisprudence is reviewed.
[2] Contra: In re Atkins' Estate, 5 Cir., 30 F.2d 761, without citation of authority for its conclusion; and obiter dictum in Commonwealth Finance Co. v. Livingston, La.App., 12 So.2d 44.
[3] It seems quite evident that the redactors of the Civil Code, in restricting the natural obligation imposed on a legatee of an estate to execute the dispositions of the testator which were defective for want of form only, evinced a plain purpose that the voluntary execution by the legatee of reprobated donations (matters of substance) were to be discouraged and that any such transfer by a legatee would not suffice as consideration for an onerous contract.