On Rehearing.
MOISE, Justice.
As stated in the original opinion, the evidence preponderates in favor of an understanding between the testatrix, Mrs. Champagne, and her heir, Mrs. Breaux, that this property “would go” to the former’s godchild, Elmo Breaux, on his attaining majority. This understanding was dehors the written testament.
We are confronted with one question: Are fidei commissa and substitutions included in the “donations or other disposition” made by a decedent, for the execution of which a natural obligation is imposed on the heir by Article 1758, paragraph 4, quoted in the original opinion? If they are, then the heir, in this case Mrs. Breaux, who has voluntarily carried out this natural obligation, is bound by her own act, under Article 1759, also quoted in full in the original opinion, notwithstanding that the intended beneficiary, Elmo Breaux, could himself not have main *812 tained an action at law to enforce the performance of that obligation.
The original opinion, following the rationale of Morris v. Abney, 135 La. 302, 65 So. 315, restricted the first three paragraphs of Article 1758 to contracts, thus precluding a construction of the fourth and last with them. The theory underlying the perpetuation of that restriction was that the language in paragraph 4 of Article 1758 — “which are defective for want of form only” contains a “negative pregnant” that those dispositions or donations which might be defective in substance, though proper in form, ought not to be carried out in any event. There is, however, no need to search for the implication of a “negative pregnant”, when paragraph 1 of Article 1758 contains an outright prohibition against the performance of an • obligation which is immoral or unjust. Unless the standard provided by Article 1758, paragraph 1, is applied, there is a natural obligation on the part of the heir to carry out those “donations or other dispositions”. The holding in Morris v. Abney is not controlling, since that case involved an action by a legatee under a will defective in form to enforce performance by the heir, which, being merely a natural obligation, was not enforceable at law; the restriction of the various sections of Article 1758 was not the basis of that decision, and hence constituted only dicta, which we do not choose to follow. Here the heir has already carried out the natural obligation; and, because of the nature of the disposition, it must be examined in the light of moralsy justice and general policy.
The original opinion stated that, this “understanding” was a fidei commissa or a substitution, and treated them as. equally void in substance. But they are-distinct, and this distinction has been ably set forth in 13 Tul.L.Rev., p. 71, as follows:—
“A substitution is a donation of property to a donee, who holds title and possession for life, without the power of alienation, the property to be transmitted at his death to a second donee, originally designated by the donor. ‘Substitution’ is translated by Cachard as ‘entail.’ If not identical, it is analogous to a conveyance of a fee entail in the common law, and had the same historical origin, in that the device was created to perpetuate the power and wealth of great feudal families.
“A fidei commissum is created when-property is given to one for the benefit of another, to vest in the latter at a given time or upon a stated condition.”
Article 1520 of the Revised Civil Code contains a 'blanket prohibition against substitutions and fidei commissa, and reflects the disinclination of the codal redactors to-permit the establishment of perpetuities and the entailment of estates, which had been the legacy of the feudal system to both the common law of England as well as the pre *814 Revolutionary law of France. However, the Code Napoleon permits the establishment for the benefit of certain persons of “fiducies”, which are analogous to the common-law trust. Articles 897, 1048, 1049, Code Napoleon. Furthermore, the Louisiana Legislature, beginning with Act No. 197 of 1920, and down to the present time, the current statute in force being Act No. 81 of 1938, LSA-RS 9:1791 et seq., has recognized the feasibility of a limited trust, whereof the fidei commissum (translated as a “leaving to faith”) is the Civil law prototype. A substitution, on the other hand, involves a definite keeping of property out of commerce for an unlimited period of time, and is reprobated both by the civil law and by business custom.
The historical background of a fidei commissa was given to show the origin and the reasons for the law in former times and the modifications of the law now under the Trust Act. The original opinion [218 La. 805, 51 So.2d 77], stated that the understanding between Mrs. Breaux and Mrs. Champagne was a fidei commissa or a substitution. The understanding between Mrs. Champagne and Mrs. Breaux, according to the interrogatories propounded Elmo Breaux was that the property “would go” to him on his attaining majority. The obligation therein imposed was a natural one coming within the meaning of Article 1758 of the R.C.C., where it is stated that there are four kinds of natural obligations, one of which is "Such obligations as the law has rendered invalid for the want of certain forms or for some reason of general policy, but which are not in themselves immoral or unjust”. We argued that the agreement and the execution of the agreement was not immoral or unjust. Mrs. Breaux having carried out this natural obligation to her son, it cannot now be rescinded either by her or her heirs under the provisions of Art. 1759, Par. 1, R.C.C.
For the reasons assigned, the judgment of the district court is affirmed. The right is reserved to plaintiffs to apply for a rehearing.
HAMITER, J., concurs in the decree.
McCALEB, J., dissents with written reasons.
LE BLANC, J., dissents.
HAWTHORNE, J., takes no part.