McCALEB, Justice
(dissenting).
As I comprehend it, the prevailing opinion on this rehearing is predicated on the premise that the understanding between Mrs. Champagne and Mrs. Breaux, respecting defendant’s eventual inheritance of the property in contest, was a' fidei commissum and that, this being so, there was a natural obligation imposed upon Mrs. Breaux under the fourth paragraph of Article 1758 of the Civil Code to carry out the wishes of Mrs. Champagne as the disposition was void for *816 want of form only because a fidei commissum is not “inherently evil, unjust, immoral, or against general policy.”
Although the majority seem to indicate otherwise, it was never stated or contended in this case, either originally or on rehearing, that fidei commissa and substitutions were evil, unjust or immoral. It was simply declared in the original opinion that these testamentary dispositions are reprobated by Article 1520 of the Civil Code and that, therefore, it was unnecessary, for purposes of decision, to determine whether the verbal understanding between Mrs. Champagne and Mrs. Breaux was tantamount to the creation of a fidei commissum or a substitution for, in either event, the bequest would have been illegal. The opinion on rehearing, however, deems it important to determine the exact nature of Mrs. Champagne’s verbal disposition and proceeds to decide (1) that it is a fidei commissum and (2) that it can be sustained as a natural obligation under paragraph 4 of Article 1758 because fidei commissa are not unjust or against general policy.
I cannot agree with either of these resolutions. In the first place, I am constrained to take issue with the observation of the majority that it was stated in the original opinion that there was an understanding between Mrs. Champagne and her heir, Mrs. Breaux, “that this property 'would go’ to the former’s godchild, Elmo Breaux, on his attaining majority”. Conversely, the original opinion sets forth that the parol evidence relied on by defendant was sufficient to support a ruling “that Mrs. Breaux understood it to be the intention of Mrs. Champagne that the property was ‘to go’’ to defendant after the former’s death” and it was asserted that, whereas defendant and his wife had testified that Mrs. Breaux had told them that it was Mrs. Champagne’s, desire that the property be transferred to. defendant when he became of age, none of the other witnesses, either for the defense or plaintiffs, corroborated this evidence but that, on the contrary, they had stated that it was Mrs. Champagne’s desire that the property “would go” to defendant at his mother’s death. (Emphasis mine).
Hence, were it imperative to determine whether the disposition of Mrs. Champagne was a fidei commissum or a substitution, it is easy to see that it falls squarely into the category of the latter as the clearly preponderating and disinterested testimony shows that it was Mrs. Champagne’s wish that the land be given to defendant after his mother’s- death.
But, even if it be assumed that the majority are correct in finding that the understanding between Mrs. Champagne and Mrs. Breaux created a fidei commissum, the conclusion that such a disposition is not inimical to public policy is, in my opinion, palpably erroneous — for fidei commissa are not only reprobated by the general law, Article 1520 of the Civil Code, but are specifically prohibited by Section 16 of *818 Article 4 of the Constitution, as amended "by Act No. 318 of 1944, save that the Legislature is given the power to authorize the •creation of trust estates for a period not ■exceeding ten years after the death of the •donor and under certain other conditions •not present here. Surely, the Louisiana 'Trust Estates Act, Act No. 81 of 1938, permitting certain trusts for limited periods when created under specified conditions, ■does not effect a repeal of Article 1520 or •a legalization of fidei commissa in entirety. If construed otherwise, the statute is unconstitutional.
Hence, any testamentary disposition of the type depended on in the instant case is reprobated being against public policy and, as such, cannot form the basis for a natural obligation under the fourth paragraph of Article 1758 of the Code.
The majority assert that the case of Morris v. Abney, 135 La. 302, 65 So. 315, is inapplicable to the case at bar and that the pronouncement contained therein — that ■the first three paragraphs of Article 1758 of the Civil Code have their origin in contract whereas the fourth arises from donations defective for want of form only— “constituted only dicta, which we do- not •choose to follow”.
I readily concede that the case is not controlling insofar as the facts of this matter .are concerned as Morris v. Abney involved .a donation under a will void for want of form only, which was not executed by the legatee of the testator, whilst, here, the question presented is whether an executed disposition, reprobated in law, can supply consideration for an onerous contract on the theory that it is a natural obligation. But the decision in Morris v. Abney is clearly appropriate to the conclusion to be reached in this case because that opinion discusses and determines the proper meaning and application of Articles 1757, 1758 and 1759 of the Code, dealing with natural obligations, upon .which this case must be decided. Albeit, counsel for defendant, who are now attacking Morris v. Abney, cited and relied on it as an authority in their favor when the case was presented on the original hearing.
Moreover, even if the deductions in Morris v. Abney relative to Articles 1758 and 1759 of the Code be considered as dictum, I know of no good reason why they should not be followed if they be correct. The prevailing opinion on rehearing merely states that the court does not choose to follow the alleged dicta. It does not declare that the legal principles announced by the Court are wrong or attempt to point out the error, if error exists.
In my judgment, the opinion in Morris v. Abney contains a comprehensive and well reasoned analysis of the Articles of the 'Civil Code which treat of natural obligations. The holding therein that the first three paragraphs of Article 1758 have their origin in contract, whereas the fourth arises from donations defective for want of form only, is fully sustained by a thoughtful con *820 sideration of the Articles. As pointed out in the original opinion herein, the second and third paragraphs of Article 1758, relative to persons unable to contract and obligations 'barred by prescription, are without pertinence to this cause and the basic question is whether the alleged natural obligation of Mrs. Breaux can possibly be fitted into the first paragraph of the Article, since it obviously cannot be a natural obligation within the meaning of the fourth paragraph as the disposition was reprobated under our law and not void for want of form only.
The first paragraph of Article 1758, in defining natural obligations, reads: “Such obligations as- the law has rendered invalid for the want of certain forms or for some reason of general policy, but which are not in themselves immoral or unjust”.
In order to discern whether the natural obligations provided for under this'paragraph have their origin in contract, the all important word is “obligations”, as the • clause is “Such obligations as the law has rendered invalid * * * ”, By reference to the preceding Article 1757 it will be seen that there are three kinds of obligations, imperfect, natural and civil or perfect. Manifestly, the lawmaker, in defining the first class of natural obligations in paragraph 1 of Article 1758, does not mean imperfect or moral obligations because those obligations produce no legal effect whatever. Succession of Miller v. Manhattan Life Ins. Co., 110 La. 652, 34 So. 723 and Succession of Burns, 199 La. 1081, 7 So.2d 359. Therefore, it seems plain that, when the Article refers to “Such obligations as the law has rendered invalid” for certain reasons, it means those obligations which would have been, but for their legal invalidity, perfect or civil obligations which are defined by Article 1757 as being one founded on contract.
If, as counsel for defendant argues, the obligations referred to- in the above quoted paragraph include moral obligations as well as those resulting from contract, then Article 1757, declaring that moral or imperfect obligations are without legal operation, is rendered ineffective. Specifically, if all unenforceable obligations, whether they stem from contract or not, are to be included within the provisions of the first paragraph of Article 1758, then there is no-basis whatever for thé fourth paragraph of the Article or, for that matter, any other provisions on-the subject. Using the fourth paragraph of Article 1758 as an example, it will be perceived that, if a natural obligation is imposed under paragraph 1 upon a legatee to execute the dispositions of the donor which are void for reasons of public policy, paragraph 4 is rendered hopelessly and utterly meaningless when it provides-that a natural obligation exists to execute-those donations “which are defective for want of form only.”
Articles 1757, 1758 and 1759, being laws-in pari materia, must, under Article 17 of the Code, be construed with reference to each other and in an effort to give effect *822 to each separate provision; not to destroy it. By using this simple tenet of statutory ■construction, a sound and judicious conclusion is reached. I think it error to depart from it.
For these and the reasons given in the ■original opinion, I respectfully dissent.
Since the writing of this dissent I note that the majority opinion has been changed .so as to hold that the case is governed by paragraph one of Art. 1758. However I deem further comment unnecessary.